## No. 771

### First Circuit

## SUCCESSION OF CRAWFORD

(May 5, 1931. Opinion and Decree.)

H. E. Ellis and Frank B. Ellis, of Covington, attorneys for administratrix, appellant.

S. W. Provensal, of Slidell, attorney for opponent, appellee.

LEBLANC, J. Miss Martha Crawford died in the parish of St. Tammany on January 20, 1930, and her succession was duly opened in the district court in that parish. Mrs. Richard Porter presented a bill for $486 for 162 days' nursing, at $3 per day, to the administratrix of the succession, Mrs. Rosa Crawford Banks, who declined to place the same on the account she presented to the court. Mrs. Porter then filed an opposition setting up her claim, which went to trial without the administratrix having filed any pleadings of answer thereto.

It developed during the trial of the opposition that the opponent had received the sum of $60 from the decedent before

she died. She maintained, however, that this amount was paid for board, and was in no way connected with the claim for nursing. The district judge nevertheless gave the succession credit to that extent, and rendered judgment in the sum of $426. The administratrix appealed, and the opponent has answered, asking for an increase in the judgment to the amount as prayed for.

The testimony shows that prior to August 11, 1929, the decedent, an elderly person, who lived alone, relied a good bit on the attention given her by the opponent, Mrs. Porter. She lived in her own home, but was very frequently at Mrs. Porter's, and took quite a number of her meals with her. At that time the house Mrs. Porter was living in belonged to Miss Crawford. It was formerly an old store building which had been somewhat crudely converted into a home. As we understand the evidence, at that time Mrs. Porter was paying rent. On August 11, 1929, Miss Crawford took very ill, and it is shown by the testimony of Mrs. Porter, corroborated by other witnesses, that it was her desire to remain at Mrs. Porter's where she could be better taken care of. She did remain, bedridden most of the time, from that day on to January 20, 1930, when she died. The evidence shows that she was about seventy years of age, and that she was suffering from a curvature of the spine. She required almost constant care and nursing, which the proof shows she received from Mrs. Porter. Dr. Singletary, who attended her, testifies that she was satisfied where she was, and that she was getting as good attention as she could, considering the circumstances. Mrs. Marshall, a trained nurse, who visited the decedent frequently, also testified most favorably as to the care and attention given by the opponent, and she is corroborated in this by several other ladies residing in the neighborhood who were often there to render what assistance they could. We are of the opinion that the opponent has shown by a clear preponderance of the testimony that she rendered the service she says she did, and that it was fully worth the amount she charges for it.

The administratrix submitted a considerable amount of testimony to show that the house in which Mrs. Porter lived was not screened, and therefore infested with flies, that it was not as commodious as it should have been to be occupied by a family as large as hers, and by no means as proper a place for a sick person as was Miss Crawford's own home. All of this, however, as we view it, has no bearing on the claim presented by this opposition, which is for nursing. Especially does such testimony lose its weight in this case where the fact appears to be that Miss Crawford was there by her own choice, was well satisfied, and never did complain about the surroundings and the attention she was receiving.

There was also an attempt made to show that Mrs. Porter used for herself and family the milk from a cow and also chickens and eggs, which was all the property of Miss Crawford, but the proof is to the contrary. The fact is that after she got disabled, the care of the cow and chickens added another burden to those Mrs. Porter already had. She admits using the milk after Miss Crawford had had all she needed, and that was only up to the time she sold the cow during the early fall. After a while, she also sold all the chickens.

If we are to judge the defense to this opposition by the testimony of the administratrix, it is to the effect that Mrs. Porter had been paid all she was entitled to

by the transfer of the small property on which the home she lived in was situated. When asked if she had any reason for refusing to pay the bill if she believed it to be a just and honest obligation, the administratrix answers: "Not a bit, if they had not got the place we would have paid the bill." Aside from the fact that the transfer of the property referred to is by authentic deed apparently in proper form, which is not attacked, it occurs to us that the refusal to pay the bill on the ground urged by the administratrix presents a matter of special defense which should have been specially pleaded. The lower court, however, permitted testimony to be adduced regarding the transfer and after considering it, came to the conclusion that the property had not been given in payment for services rendered. We, also, after giving it due consideration, believe that it was really a donation by Miss Crawford with no intention on her part of it standing as a payment for the nursing and care given her by Mrs. Porter. That she acknowledged she was under obligation to Mrs. Porter, for this is shown by the admission she made to her that she would pay her after she would get well. Counsel for the administratrix directs our attention to some decisions of the Supreme Court which refer to the statements of deceased persons as the weakest kind of testimony. Such is a fact, but it is nevertheless legal evidence, and when corroborated as in this case, assists in the solution of the issue before the court. On that subject, moreover, we now have Act No. 11 of 1926, referred to by counsel himself, which provides in effect, that to establish a debt against a party deceased in a suit brought within twelve months after his death, "the testimony of at least one credible witness of good moral character besides the plaintiff" must be produced. There is certainly nothing to suggest that Mrs. Marshall is not a person of good moral character, worthy of belief, and she is equally as positive as is Mrs. Porter in her assertion that the decedent told her that she would pay Mrs. Porter for nursing her.

In his reasons for judgment, the trial judge holds that "there is proof that the opponent received in money for board or whatever you might term it—the sum of Sixty dollars while Miss Crawford was at her house" but he then proceeds to credit the account, which is for nursing, with that amount. That appears to us to be a bit inconsistent, especially so in view of the fact that there seems to be no question about the value of the services rendered for nursing. We have accepted Mrs. Marshalls' testimony and relied considerably on it to sustain the claim for nursing. It would be somewhat difficult to reconcile a rejection of it on the question of the payment of these sixty dollars. She seems to have been trusted by Miss Crawford, as she had access to her bank account and paid her bills for her. She makes it plain that $20 per month, which was paid for three months, was for board and included besides the washing and tending to the cow and everything around the place. On this matter we find that we have to disagree with our learned brother of the district court, and necessarily the judgment will have to be amended by increasing it to the extent of $60.

For the foregoing reasons, it is ordered that the judgment appealed from be amended by increasing it in amount from the sum of $426 to the sum of $486, and that as thus amended, it be affirmed.