ELLIS, Judge.
The plaintiff, James E. Heap, brought four suits in order to collect the proceeds from four fire insurance policies he had on a building known as the “Chico Club” near Gonzales, Louisiana. The plaintiff filed separate suits against each of the four insurance companies, these suits being consolidated for the purposes of trial.
In these suits plaintiff prayed that the defendants pay the face amount of the policy, plus all penalties, interest and attorney’s fees, as provided in the LSA-Revised Statutes 22:658.
On October 30, 1953, the plaintiff was issued a policy by the Eagle Fire Insurance Company on his Restaurant and Bar known as “Chico Club”, the face amount of the policy being $2,000. On that same date, another policy with the American Equitable Assurance Company of New York was issued to the plaintiff covering the “Chico Club”.
On December 31, 1953, two additional policies were issued to the plaintiff, one being with the defendant, Newark Insurance Company, and the other with Employers Fire Insurance Company, both in the face amount of $2,000 and covering the “Chico Club”.
On January 17, 1954, the “Chico Club” with all its contents was totally destroyed by fire. Petitioner alleges he made the proper demands and furnished the required proof of losses, but despite amicable demand, the defendants arbitrarily refused to pay the amount due under the policy for the fire loss, therefore the full amount of the policy, plus penalties and attorney’s fees are due.
All four of the defendants filed practically identical affirmative defenses alleging the affirmative defense of arson and that the plaintiff fraudulently withheld the information from the defendant that the fire was of an incendiary origin.
The defendants alleged that the residents in the vicinity of the “Chico Club” petitioned the public authorities to deny a renewal of the permit for the sale of alcoholic beverages.
*802 Further pursuing the affirmative defense, the defendants alleged that the “Chico Club” was mortgaged to National Bank in Baton Rouge and that during the year prior to the fire the petitioner borrowed money from Tony Acosta to make the payments on the mortgages.
The defendants then alleged the salary of petitioner was $156 per month during the year immediately prior to the fire and that the petitioner had no other sottrce of income and that on January 17th the petitioner was in serious financial difficulties being indebted to the bank, the Baton Rouge Securities Company, as well as Mr. Acosta. They also alleged that the United States Government filed a delinquent income tax lien against petitioner’s property in the sum of $1,900. They alleged that Roberts-East-land Insurance Agency by registered letter January 8, 1954 notified the petitioner that his contracts of insurance mentioned above would be cancelled on January 18, 1954.
Further, they alleged that the petitioner advertised in the Gonzales Weekly to sell an air conditioner together with other restaurant fixtures and that any prospective buyers apply at the “Chico Club” and that he advertised to sell or rent for $75 per month.
The defendants -next alleged that the petitioner brought an alcoholic to the “Chico Club” arid began to serve him with liquor, encouraging him to set fire to the “Chico Club”. That on the afternoon of January 17th the petitioner closed the Butane ga,s line, unscrewed the fuses and left, and that the alcoholic did set fire to the club as requested by plaintiff.
The record in this case is very lengthy dealing a great deal with the cross examination of the plaintiff himself. After the trial on the merits judgment was rendered dismissing plaintiff’s suit, from which he perfected an appeal to the Supreme Court. Pursuant to the amendments of Art. 7, Secs. 29 and 30, Louisiana Constitution, LSA, this appeal was transferred to this court.
It is significant to point out that during the cross examination of the plaintiff the trial judge instructed him time and again to answer the questions of the defendants’ counsel and openly charged him with being deliberately evasive in his answers. His testimony, as a matter of fact, in many instances shows that he had a convenient lapse of memory, but upon being pressed or shown convincing proof contrary to his position he would eventually, grudgingly admit many of the questions propounded by the defendants were true.
The facts in the case reveal that the plaintiff bought the “Chico Club” from a Mr. Luther Dodge in June of 1949. Petitioner then operated the store for several months and rented it to a Mr. McCrory about the first of 1950. Approximately in 1951 Mr. McCrory and a Mr. Broussard went in partnerships on the property and operated the club until 1953.
The petitioner, although he originally testified that he received $100 per month from Mr. Broussard and Mr. McCrory, later admitted under cross examination that he gave them $25 back out of the $100 per month in order to repair the place and keep it up to date. Therefore, we can only conclude that he was actually only receiving $75 as was urged by counsel for defendant herein.
Sometime during 1952, the Airline Highway was moved and the Old .Highway upon which the “Chico Club” was located became obsolete as most of the traffic through that area transferred to the new Airline Highway. After the license to sell alcoholic beverages had expired at the end of 1952, petitioner and his lessors were unable to obtain another permit, therefore, the club was closed down in 1953.
Despite plaintiff’s denial, the record does show that commencing in 1953 his financial status was such that a friend paid most of his notes for him on the mortgage covering the “Chico Club”. The petitioner once again under rigorous cross examination finally admitted that the same friend, Tony Acosta, paid the taxes for him in 1953, *803 as well as the insurance premiums. All of this money was loaned to him by Tony Acosta.
In 1953 the petitioner mortgaged his Studebaker automobile in order to obtain a loan from the Baton Rouge Securities Company. Although petitioner originally denied it, he finally admitted his payments were in arrears for the months of October, November and December of 1953, as well as January of 1954.
Petitioner made $87 every two weeks and from this the automobile payments were $54. The notes Acosta had paid for him on the club were $76 and some additional expenses of the petitioner were approximately $600 in doctor bills resulting from an injury he received in an altercation.
Petitioner also admitted that in January of 1954, he received correspondence from the Citizens National Bank requesting that he pay the balance due on his mortgage loan. He also admitted a $1,900 tax lien filed against his property shortly before the fire. .
In addition, it was proven, despite plaintiff’s denial, that the latter had attempted to induce by bribery an occupant of a store owned by him at Chipóla, Louisiana, to burn it down so that he might collect the, insurance of $3,000.
Motive on the part of the plaintiff is fully substantiated by the evidence. Financially plaintiff was in dire straits.
The testimony reflects that plaintiff was notified on January 8, 1954 of cancellation of the policies, effective January 18th. He received this notice January 12, 1954, went to the office of the insurer to determine positively that this cancellation was January 18th, and the fire destroyed the building only three and one-half hours before the cancellation deadline. Immediately after this visit to the insurer he took his alcoholic friend to the club.
The incendiary origin of the fire is equally well established by the testimony. There is direct testimony that the fire was deliberately set by an alcoholic friend that plaintiff had brought to the Club on January 13th for the alleged purpose of doing some work in it. One thing this alcoholic friend was supposed to do was to paint, although plaintiff admitted he had no paint brush. There was some paint in an open container and some turpentine. This is what the friend kicked over and then struck a match and threw it into the turpentine and paint to start the fire. This friend was drunk at the time and remarked in the presence of his drinking companion that plaintiff wanted him to burn it or words to that effect. It is obvious that plaintiff had supplied his friend with liquor during their four day stay together at the club. Plaintiff had left the friend and his companion shortly prior to the fire.
The alcoholic friend of plaintiff who set the fire gave a statement to the sheriff admitting that he burned the building but only because of plaintiff’s insistence. This man died before the trial, and over the objection of the plaintiff his statement was admitted as being incriminating and against his interest in that he could be civilly held responsible as well as criminally. The trial court’s ruling was based upon Miller v. Miller, 226 La. 273, 76 So.2d 3. The Court also considered the evidence as the weakest evidence, scarcely worthy of consideration which is the ¡Correct rule as shown by Succession of Crawford, 16 La.App. 326, and Swift v. Moffett, La.App., 6 So.2d 93 and cases therein cited.
This statement is not necessary in order to correctly adjudge this case. The entire record over-whelmingly preponderates in favor of the defendants and the correctness of the judgments below. A more detailed discussion would be superfluous.
The defendants have affirmatively established by strong and consistent proof composed of direct as well as circumstantial evidence the affirmative defense of arson. Defendants have proven the motive and the *804 incendiary origin and that the plaintiff was responsible for it. The evidence even fulfills the rule as to circumstantial proof in such a case, namely, “the evidence is of such, import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire.” Sumrall v. Providence Washington Insurance Company, 221 La. 633, 60 So.2d 68, 69.
For the reasons assigned, the judgment is affirmed.
Affirmed.