172 So.2d 318 (1965)
John D. SMITH
v.
James FOUCHA and Harmond Bonds.
No. 1734.
Court of Appeal of Louisiana, Fourth Circuit.
February 8, 1965.
Rehearings and Petition for Intervention Denied March 8, 1965.
Writ Refused April 15, 1965.
*319 Krieger & Krieger, I. Jay Krieger, Robert K. Tracy, New Orleans, for plaintiff-appellee.
George Sladovich, Jr. and Alcide J. Weysham, New Orleans, for defendant-appellant.
Before McBRIDE, YARRUT and HALL, JJ.
YARRUT, Judge.
Plaintiff sued to recover from Defendants, jointly and in solido, $70,000 plus $5,000 for additional hospitalization and medical help, for personal injuries and loss of wages as follows: (1) pain and suffering, $20,000; (2) future pain and suffering, $10,000; (3) permanent disfigurement, $10,000; (4) loss of future earnings, $30,000.
*320 The claim arises from the shotgun shooting of Plaintiff by Defendant (Harmond Bonds), resulting in the amputation above the elbow of his left arm, while Bonds was acting, at the time, as the employee and agent of Defendant (James Foucha).
Plaintiff charges the shooting was willful and without cause or provocation. Foucha denied Bonds was acting as his agent, and averred that Plaintiff refused to leave his place of business at midnight, threatened to "tear-up" the same, and threatened Bonds with a knife, thus justifying Bonds' use of his shotgun in self-defense.
There was judgment in favor of Plaintiff for $20,880.00, interest and costs in solido, against both Defendants, $3,000 for one-year loss of wages, and $5,880 due or to become due the Veterans Administration Hospital in New Orleans for hospitalization and medical services; and $12,000 for pain and suffering and loss of his left forearm. Defendant Foucha alone has taken this appeal and Plaintiff has not answered.
The scene and time of the shooting was about midnight in the tavern or lounge, known as the "Club Mona Lisa," owned and conducted by Foucha at 3300 Clouet Street, New Orleans, for whom Bonds was handyman and night watchman.
The facts developed by the evidence are: Plaintiff and a companion, after leaving their work about 7:00 p. m., ate supper at a restaurant, then drove to the Mona Lisa Lounge about 9:00 p. m. Plaintiff met his brother from Mississippi, and they sat at a table with several other friends and ordered beer and gin.
Plaintiff and his brother began having a friendly tussle between themselves at the table, and Defendant Foucha asked them to leave, which they did without argument
or complaint. Plaintiff then left his brother and went to a sister's home for a sandwich. While at his sister's home, Plaintiff thought he had left his coat at the lounge, with his identification papers and his pocketbook; so he left his sister's for the Mona Lisa to look for his coat, etc. When he arrived at the lounge, he found the lights were on and entered through a side door which was unlocked. Upon entering he saw Roland Luke (a customer) still sitting inside the lounge. He asked Luke about his coat, and Luke answered he had not seen the coat.
Plaintiff then knocked on the door leading to a kitchen which separates Foucha's grocery from his lounge. Inside the kitchen was Harmond Bonds, night watchman. Plaintiff asked Bonds about his coat and papers. Bonds told Plaintiff the place was closed and shut the door on him. Plaintiff began searching around the bar and "rest" room for his coat. Upon leaving the "rest" room he again knocked on the kitchen door to inquire about his coat. Bonds again opened the door, told him the bar was closed and slammed the door. Plaintiff walked from the door and turned sideways to talk to Roland Luke. While he was talking to Luke, with his back to the kitchen door, Bonds suddenly opened the kitchen door and, without any warning, fired a buck-shot blast at Plaintiff, striking Plaintiff above his left arm.
Defendants contended Plaintiff was a trouble-maker, constantly annoyed customers, was intoxicated, and advanced upon Bonds in a threatening manner with an open knife; and threatened to tear up the place.
Plaintiff was in the tavern earlier in the evening drinking with his brother and friends, and was perhaps intoxicated, but there is no evidence that he was anything but boisterous and annoying.
Bonds was not justified in the least in using his shotgun with suddenness and without any forewarning. Plaintiff had no knife, or other weapon on his person, and made no overt act that could possibly have justified Bonds' act.
Roland Luke admitted having a few beers himself and, when questioned about Plaintiff's *321 conduct upon returning to the lounge, testified:
"A. He came back and stated that he had left something a jacket or something.
"Q. Would you tell us how he entered the barroom?
"A. He came through the side door.
"Q. Was the side door open?
"A. It was.
"Q. Tell the court what happened as Mr. Smith walked into the barroom?
"A. Well when he came back and asked for his jacket or coat? I said `No I didn't notice you come in here with a jacket or coat,' and he said, `I put it over there on the wall,' and I said `I didn't see it.'
"Q. What happened after John knocked on the door?
"A. He asked Bonds for something and Bonds said, "I am not selling you anything.' He said `I am not selling you anything.'
"Q. What did Bonds do then?
"A. Well, Bonds just closed the door back.
"Q. What did John do?
"A. John went to the rest room.
"Q. Now, at this time did you see a knife in John's hand?
"A. I did not.
"Q. Did you see any gun in John's hand?
"A. I did not.
"Q. Bonds went back in again?
"A. And he opened up.
"Q. And what happened?
"A. That is when the blast came.
"Q. And about how far was John Smith from Bonds at this time?
"A. Approximately six feet or more.
"Q. How close were you to John Smith at this time?
"A. I was just about the distance from here to Your Honor.
"Q. Now, at any time beginning with John Smith's first entrance into the bar when just you were there, was he wrecking the place?
"A. The only altercation was between he and his brother that I know of."
There is no doubt that Bonds was acting as caretaker for Foucha at the time. Foucha contends Bonds was not his employee because he did not pay him. The question of pay vel non is one element of proof, but not solely determinative of the relationship of employee and employer, or principal and agent. Bonds was Foucha's tenant in a room adjoining the tavern at $5.00 per week, admittedly closed the bar and lounge at night and acted as watchman and as handyman for Foucha around the lounge and grocery with the full knowledge and consent of Foucha; for whose torts committed by Bonds in the course of his employment, Foucha is liable. LSA-C.C. Art. 2320.
Everyone has the right to defend himself or his property, and those dependent upon him for protection; but one cannot use any greater defensive force than is necessary for that purpose.
In Oakes v. H. Weil Baking Co., et al., 174 La. 770, 141 So. 456 (1932) the court held:
"Under no theory can it be said that defendant was warranted in using any greater force than was necessary in ejecting plaintiff from the premises." 141 So. at 457.
In Barrett v. Matthews, La.App., 138 So. 2d 151 (1962) the court held that defendant's *322 conduct in shooting the plaintiff was intentional, unnecessary, unjustified and inexcusable under the circumstances; pointing out that, if the defendant was insistent upon plaintiff immediately leaving his premises, contact could have been made with the Sheriff's Office, and the result accomplished by properly constituted law enforcement officials.
In the case at bar, Defendant Bonds had more than sufficient time to call the police to eject Plaintiff from the lounge if it was necessary. Instead, he shot Plaintiff without justification or warning and when his back was turned.
In Theriot v. Gianelloni, La.App., 121 So. 2d 275 (1960), the Court said:
"The question of provocation or justification of an assault * * * is purely a matter of fact to be determined in the light and circumstances of each individual case. In the case at bar the initial trier of fact has resolved this crucial issue against defendant in his written reasons for judgment and we find no manifest error in such conclusion." 121 So.2d at 277.
Other cases in point are Rivers v. Brown, La.App., 168 So.2d 400 (1964); Bethley v. Cochrane, 77 So.2d 228 (La.App. 1955); and Randall v. Ridgley, 185 So. 632 (La. App.1939).
When we consider the locus of the shooting was a public tavern open until midnight; that Plaintiff had been there a few hours before; that he returned and entered an unlocked side door without force; that he made no effort to conceal himself or his purpose; that his back was turned to Bonds at the time, we have no alternative but to conclude that Bonds was "trigger-happy" in shooting Plaintiff without any notice or warning, which could very well have resulted in Plaintiff's death.
Regarding quantum, though the judgment of the district judge awarded $20,880 in globo without specifying the items of damages included therein, his reasons for judgment, dictated into the record at the conclusion of the trial, show he included in the award an item of $4,710 for medical and hospital services rendered, and $1,170 for services to be rendered by the Veterans Administration Hospital in New Orleans.
Since Plaintiff is under no present or future personal obligation to pay for this hospitalization, and showed no authority to recover these amounts for the Hospital, the cost of the same, quoad Plaintiff, is damnum absque injuria. Drearr v. Connecticut General Life Ins. Co., La.App., 119 So.2d 149 (1960).
Further, Plaintiff's entire claim for medical expenses is subrogated to the United States under 42 U.S.Code § 2651. Therefore the subrogee is the only party who can recover such expense. LSA-C.C.P. Art. 697.
Moreover, it has been held in a federal tort claims action that a veteran is not entitled to recover the value of hospital care provided free to him by the government because he suffered no loss thereby. Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200, remanded to the 4th Circuit, 176 F.2d 482.
Under the circumstances, the item of $5,880 allowed by the district court as damages for hospital services rendered and to be rendered by the Veterans Administration Hospital must be disallowed and the judgment reduced by that amount; otherwise affirmed; both Defendants to pay the court costs in the District Court; and Foucha alone to pay the costs of appeal.
Judgment amended and affirmed.