KLIEBERT, Judge.
Louisiana Highway 48 (Jefferson Highway) is a four-lane highway which runs through the City of Harahan and which is intersected by South Cumberland Street. On November 22,1977, Albert A. Ricker, Jr. was operating his motorcycle in a westerly direction on Louisiana Highway 48 (towards Kenner). As Ricker approached the intersection of Jefferson Highway and South Cumberland Street, a 1962 Chevrolet van, which had been traveling in an easterly direction (towards New Orleans), turned left into the path of Ricker’s motorcycle, resulting in a collision which injured Ricker.
Ricker sued for damages, alleging severe, painful, disabling, disfiguring and permanent injuries, which primarily consisted of multiple facial fractures, loss of nine teeth, and resultant scarring and speech impediment. Made defendants were Webster Thompson, the owner and driver of the Chevrolet van, the Travelers Indemnity Company, the liability insurer of Webster Thompson, and Little Zion Missionary Baptist Church of Kenner, Louisiana, Inc.
After trial on the merits, judgment was rendered in favor of Albert A. Ricker, Jr., and against Webster Thompson and Travelers Indemnity Company, jointly and in soli-do, in the sum of $50,619.13, subject to the limits of liability insurance policy, together with all costs of the proceeding. In addition, judgment was rendered in favor of defendant, Little Zion Missionary Baptist Church, dismissing plaintiff’s demand against them.
Webster Thompson and Travelers devolu-tively appealed the judgment, assigning as error the determinations of liability, quantum, and the defendant’s ability to respond in judgment. Plaintiff answered the appeal, seeking to have the judgment amended insofar as it absolved Little Zion Missionary Baptist Church of liability. Subsequent to trial, Webster Thompson died and his widow, Mildred Green Thompson, was substituted as proper party defendant herein.
Defendants appealed the trial court’s holding that Webster Thompson’s negligence caused the accident and contends plaintiff was negligent or contributo-rily negligent in causing the accident. The record does not support the defendant’s contention.
The record is devoid of any actionable negligence on plaintiff’s part. Albert Ricker, Jr. was proceeding lawfully on a favored street at a lawful rate of speed. A motorist who is proceeding lawfully on a favored street at a lawful rate of speed is entitled to presume that a crossing motorist will obey the law and allow him to continue. Bailes v. Casualty Reciprocal Exchange, 279 So.2d 255 (La.App. 2nd Cir. 1973); Simmons v. Alphonse, 291 So.2d 534 (La.App. 4th Cir. 1974).
*833 Furthermore, the duties imposed upon Webster Thompson as a left-turning motorist are clear. Basically, the driver of a left-turning vehicle must yield the right of way to oncoming vehicles if they are so close to constitute an immediate hazard. Bennett v. U. S. Fidelity & Guaranty Company, 373 So.2d 1362 (La.App. 1st Cir. 1979), writ denied 376 So.2d 1269; R.S. 32:104.
Since Webster Thompson violated his duty of yielding the right of way to Ricker’s oncoming motorcycle, and since there is no proof of negligence on Ricker’s part, then the trial court was correct in finding that Webster Thompson’s negligence was the proximate cause of the accident.
The standard of review for quantum was enunciated by the Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976) wherein it stated (at 334):
“We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award, (citations omitted) Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.”
The Supreme Court further articulated the process for evaluating quantum in Reck v. Stevens, 373 So.2d 498, 501 (La.1979) wherein it stated that:
“_the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact’s ‘much discretion,’ La.Civ.C. Art. 1934(3), in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulate reason, be considered either excessive _or insufficient.” (emphasis added)
Analysis of the evidence in this case reveals that the trial court’s award of quantum was not an abuse of the “much discretion” afforded trial courts under La.Civ.C. Art. 1934(3). The testimony elicited at the trial amply supports the award made by the trial court.
Dr. Robert H. Cox, an ear, nose and throat specialist, first examined plaintiff the day after the accident. He diagnosed plaintiff as having fractures of both cheekbones and fractures of the gums that hold sockets for the teeth. Additionally, plaintiff suffered a broken nose and had a split in his palate, running the full length of his mouth, separating one cheekbone from the other. After waiting ten days for the swelling to subside, Dr. Cox performed surgery on the plaintiff in order to wire his cheekbones and face together and to wire plaintiff’s jaws shut. Dr. Cox saw plaintiff five times after the surgery and initially released him from his care on January 31, 1978. At the trial, Dr. Cox described plaintiff’s injuries as being both “severe” and “painful”.
In 1979 plaintiff, complaining of having trouble breathing through his nose, again visited Dr. Cox. He discovered a broken bone obstructing plaintiff’s breathing and performed additional corrective surgery in December, 1979. Although plaintiff had scars under his lower eyelids, scars on both sides of an eyebrow, scars on his chin and multiple facial scars due to facial lacerations, Dr. Cox did not recommend plastic surgery for them. He termed the results of both surgeries as “satisfactory” and stated the bones were well-healed and in good position. Also, he did not feel Ricker was any more susceptible to facial trauma than an individual who did not have Ricker’s problems.
A specialist in oral surgery, Dr. Richard K. Aiken, participated with Dr. Cox in the first operation performed on Ricker. His testimony as to the injuries sustained by Ricker corroborated that of Dr. Cox. The wires were removed from Ricker’s jaws on January 24, 1978 by Dr. Aiken. For sometime thereafter, Ricker had difficulty open *834 ing his mouth. He was able to open his mouth only 26 millimeters, while normal opening is 45 millimeters. Dr. Aiken also removed two upper and five lower teeth from Ricker in February, 1978, then discharged him to his general dentist that same month.
Dr. Robert S. Barry, D.D.S., first saw Ricker on February 2, 1978. He stated plaintiff was initially unable to open his mouth wide enough to take x-rays or impressions. Hence, he referred plaintiff to an orthodontist for therapy and orthodontic work. At the time of trial, plaintiff needed restorative dental work done to remedy the missing teeth. According to Dr. Barry, this would take approximately eight to ten office visits over a four month period to complete. The cost of completion was estimated at $4,600.00.
Dr. Barry related a good prognosis for Ricker after completion of the restorative work, stating that Ricker should be able to function, speak and eat adequately with the prosthesis he would place in Ricker’s mouth. The prosthesis would look acceptable in appearance as compared to natural teeth. The restorative work would probably have to be redone at least once more during Ricker’s lifetime.
Albert Ricker, Jr., plaintiff, testified he was in severe pain for several months after the accident. He could not walk or go to the bathroom without assistance for one month following the accident. Walking required the use of a cane six to eight weeks after the accident. At the time of trial, he still could not eat all foods or chew gum.
At the time of the accident, Ricker had just quit a job as a deckhand and dispatcher in order to attend Delgado in December, 1977. As a result of this accident, plaintiff had to delay school for a seven-month period and subsequently attended and finished Delgado as an automotive technician. Ricker was employed as an auto mechanic making $8.50 per hour and commission at the time of trial. He testified as to only slight pain and problems with his teeth at the time of trial which was January, 1980. His father, Albert Ricker, Sr., testified as to his son’s inability to function without assistance for about two months subsequent to the accident and to the fact that plaintiff’s speech has been impaired since the accident.
The trial court did not itemize its total award of $50,619.13 for damages. Considering the stipulated special damages ($11,020.00), the restorative work which is needed by Ricker, loss of wages for seven months, past, present and future pain and suffering, permanent loss of teeth, scarring, speech impediment, and mental anguish, we find no abuse of the discretion the trial court has in awarding damages. In the absence of such abuse, we have no reason to disturb the trial court’s award. See Coco v. Winston Industries, Inc., supra, and Reck v. Stevens, supra.
Defendant argues for a reduction of the award because of the defendant Thompson’s inability to respond in judgment. The evidence adduced at the trial indicated Webster Thompson and his wife’s income at $638.00 per month. In addition, Thompson had an interest in two lots of ground located in Jefferson Parish. No appraisals as to the value of the lots were submitted. Several pictures of Thompson’s house were admitted in evidence.
It is a well-established principle in awarding damages for personal injuries that the defendant’s ability to pay is one of the factors which must be considered. Smith v. Girley, 242 So.2d 32 (La.App. 1st Cir. 1970). Given the foregoing facts, the trial judge concluded in his reasons for judgment “Webster Thompson, being a homeowner in Jefferson Parish, as well as an owner of another piece of immovable property can and must respond in judgment”. We find no error in this conclusion.
The trial court dismissed plaintiff’s demands against Little Zion Missionary Baptist Church of Kenner, Louisiana, Inc. Plaintiff appealed from the ruling.
Webster Thompson’s deposition shows he was a member of, a deacon, and on the Board of Trustees of the Little Zion Missionary Baptist Church, Inc. At the time of *835 the accident, he was bringing children home from Sunday School. Thompson testified that he wasn’t paid, but “just did it for a pleasure”. He denied receiving a salary or that the church had control over his vehicle or his route or his actions. He admitted receiving a little money to defray his expenses.
Reverend Arthur Paul Clay, Sr., testified that Thompson was not directed to go to any particular geographic location and was not answerable to either him or the chairman of the Trustee Board. In addition, he stated Thompson was given money or a check to help defray his gasoline expenses. Reverend Clay further testified that the church did not insure or maintain Thompson’s vehicle, nor tell Thompson how many or which children to transport to school.
In its reasons for judgment, the trial court explained its rationale for dismissing the plaintiff’s claims against the church as follows:
“Defendant, Webster Thompson, received no compensation for his services from defendant, Little Zion Missionary Baptist Church; accordingly, the Court must conclude that an employer-employee relationship did not exist between Webster Thompson and Little Zion Missionary Baptist Church. However, lack of an economic relationship will not bar the existence of a principal-agent relationship. In order for a principal-agent relationship to exist, subjecting the principal to liability for the conduct of the agent, the principal must have the right to control the physical details of the agent’s activities. The Court, considering the undisputed facts in this case concludes that Little Zion Missionary Baptist Church did not exercise any control and/or direction over the person of Webster Thompson. Accordingly, the Court finds that the negligence of defendant Webster Thompson can not be imputed to defendant Little Zion Missionary Baptist Church.”
We find no error in the trial judge’s conclusions.
In Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968), Justice Barham said:
“A master or employer is liable for the tortious conduct of a servant or employee which is within the scope of authority or employment, but a principal is not liable for the physical torts of a non-servant agent.
* * * * * *
Although a servant may possess the qualities of an agent, all agents do not qualify as servants. The master-servant relationship cannot be equated with the principal-agent relationship. Employer-employee status may be included within the master-servant relation, but principal-agent status cannot unless the agent is also a servant. Neither jurisprudence nor modern commerce will allow us to define “servant” as one who does only physical acts.
‘Servant’ must be interpreted as that particular kind of agent who has a very close economic relation to, and is subject to a very close control by, the principal. A servant is one who offers his personal services for a price. He is an integral part of his employer’s business and must submit to the control of his physical conduct as well as of his time. A non-servant agent contributes to the business of his employer, but he is not such a part of it that his physical acts and the time to be devoted to the business are subject to control.”
For the foregoing reasons, the judgment appealed from is affirmed. Costs to be borne by the defendants, Travelers and Thompson.

AFFIRMED.