438 So.2d 236 (1983)
Carlyle Phillip WHITTINGTON, Individually and on Behalf of the Minor, Michael Shane Collum, Plaintiff-2nd Appellant,
v.
SOWELA TECHNICAL INSTITUTE, et al., Defendant-1st & 3rd Appellants.
No. 83-143.
Court of Appeal of Louisiana, Third Circuit.
September 16, 1983.
Rehearing Denied October 12, 1983.
Writs Denied December 16, 1983.
*239 Woodley, Barnett, Cox, Williams & Fenet, J.L. Cox, Jones, Tete, Nolen, Hanchey, Swift & Spears, Bret L. Barham, Lake Charles, for defendant-appellee-appellant.
Brame, Bergstedt & Brame, Joe A. Brame, Lake Charles, Roy A. Mongrue, Baton Rouge, Stockwell, Sievert, Viccellio, Clements & Shaddock, Robert W. Clements, Thomas W. Sanders, Lake Charles, McGlinchey, Stafford, Mintz & Cellini, Ernest P. Gieger, Jr., New Orleans, Scofield, Bergstedt, Gerard, Mount & Vernon, John B. Scofield, Lake Charles, for defendant-appellee.
Raggio, Cappel, Chozen & Berniard, Fred L. Cappel, Lake Charles, for defendant-appellee-appellant.
Before STOKER, DOUCET and KNOLL, JJ.
KNOLL, Judge.
Carlyle Phillip Whittington filed suit individually and on behalf of the minor child, Michael Shane Whittington (Michael was the son of the deceased from a prior marriage. His natural father [Mr. Collum] was also deceased. After the death of his mother, he was legally adopted by his stepfather, Mr. Whittington.), for the death of Wanda Whittington, plaintiffs' wife and mother respectively. Named as defendants were Sowela Technical Institute (hereafter Sowela) and the State Board of Elementary and Secondary Education (hereafter BESE), and their insurer, Travelers Insurance Company (hereafter Travelers); Jean B. Teel and her insurer, Allstate Insurance Company (hereafter Allstate); American International Rent-A-Car Corporation; Chrysler Corporation; E.G. McFillen d/b/a American International of Lake Charles; and National Union Fire Insurance Company (hereafter National Union).
Third party demands were filed by all defendants including third party demands against Acme Truck Line, Inc. Additionally, Sowela filed a third party demand against Continental Insurance Company (hereafter Continental).
Prior to trial summary judgment was granted in favor of American International Rent-A-Car dismissing it from the suit.
LSA-R.S. 13:5105 prohibits jury trials against public bodies. Accordingly, plaintiffs' claims against Sowela, BESE, and Sowela's third party demand against Continental were reserved to the trial judge. The determination of the extent of coverage provided by the National Union insurance policy was also reserved to the trial judge. All other issues were tried before a jury.
After a ten day jury trial a verdict was returned in favor of plaintiffs, Carlyle Phillip Whittington, individually and on behalf of the minor, Michael Shane Whittington, and against Jean Teel, Travelers as insurer of Sowela and BESE, National Union, and Allstate, assessing damages in favor of plaintiff, Carlyle Phillip Whittington, in the amount of $102,000.00 and in favor of plaintiff, Michael Shane Whittington, in the amount of $300,000.00. A verdict was rendered in favor of defendant, E.G. McFillen, d/b/a American International of Lake Charles. Also, judgment was rendered in favor of Acme Truck Line on the various third party demands filed by the defendants.
All remaining matters were submitted to the trial judge who assigned written reasons for judgment against Sowela and *240 BESE, awarding $179,395.00 to plaintiff, Carlyle Phillip Whittington, and $226,781.00 to Michael Shane Whittington. The trial judge also rendered judgment in favor of Continental on the demand by Sowela, and further held that the policy of insurance issued by National Union provided limits of $10,000.00.
On November 23, 1982, a formal judgment was rendered on the verdicts handed down by the jury and by the trial judge. A suspensive appeal was timely filed on behalf of Sowela, BESE, and Travelers. Subsequently, a devolutive appeal was taken by plaintiffs to preserve certain issues not raised by first appellant. A devolutive appeal was also taken on behalf of Jean B. Teel. Allstate has deposited its policy limits into the registry of the court.
Sowela, BESE, and Travelers urge the following ten assignments of error:
1.) The Court erred in withholding evidence that releases had been signed by all the nurses taking this trip, including Wanda Whittington.
2.) The court erred in withholding evidence that plaintiff, Carlyle P. Whittington, had remarried.
3.) The court erred in excluding testimony from the jury regarding an impending separation between plaintiff and decedent.
4.) The court erred in limiting coverage of National Union to $10,000 rather than $100,000 for this accident.
5.) The court and the jury erred in finding that Jean Teel was an agent for Sowela in procuring the vehicle to be used for the field trip.
6.) The court and the jury erred in finding that Jean Teel was an agent for Sowela while operating the vehicle on the field trip.
7.) The court and the jury erred in not finding that the students on the field trip were engaged in a joint venture with the imputation of any negligence on the part of Jean Teel to each of them.
8.) The damages awarded by both the court and the jury were excessive.
9.) The court and the jury erred in finding that Jean Teel was negligent in her operation of the van.
10.) The court erred in dismissing Sowela's third party demand against Continental.
The plaintiffs urge the following three assignments of error:
1.) The trial court erred in holding that the policy of insurance issued by National Union on the van had limits of $10,000 rather than $100,000.
2.) The trial judge erred in holding that there was no independent negligence on behalf of Sowela through its administrative or instructional personnel.
3.) The damages assessed by the trial judge and the jury were inadequate.

FACTS
Wanda Whittington was a member of the senior nursing class at Sowela located in Lake Charles. On April 6, 1979 the senior nursing students were participating in a field trip to tour M.D. Anderson Hospital in Houston, Texas. Mrs. Whittington, along with 15 other class members and 2 Sowela faculty members were occupying a 15 passenger Plymouth Voyager van owned by the Terry B. Mack Corporation and/or E.G. McFillen, d/b/a American Rent-A-Car of Lake Charles. The van was driven by Jean Teel, a member of the nursing class. While proceeding west on Interstate 10 in the vicinity of Hankamer, Texas, the van was "tail-gated" by an "18-wheeler" tractor-trailer unit. The accident occurred when Jean Teel negotiated the van from the inside lane to the outside lane to allow the "18-wheeler" to pass. In this maneuver, the van strayed from the main traveled portion of the highway onto the shoulder. Jean Teel, attempted to drive the van back onto the highway, lost control and overturned, resulting in the deaths of Mrs. Whittington and another student, as well as multiple injuries to the other passengers. Mrs. Whittington showed signs of life for 15 to 20 minutes.

*241 RELEASE
As a requirement to participate in the trip to M.D. Anderson Hospital, Sowela distributed a mimeographed "release" form to each student nurse for signature. The Whittington document read as follows:
 "Sowela Technical Institute
 Practical Nursing Department
 I, Wanda Whittington, voluntarily agree to
 participate in the following activity:
 List activityM. D. Anderson Senior Trip
 place- Houston, Texas
 date- 4-6-1979
 and hereby relieve Sowela Technical Institute
 of any and all liability associated with
 the above.
 s/Wanda Whittington 
 Name
 4-2-1979 
 Date"
Mrs. Whittington signed the document and returned it to the school personnel.
Plaintiffs filed a motion in limine to preclude the introduction of any evidence concerning the "releases". The trial court sustained the motion. Sowela, BESE and Travelers made a proffer of this evidence.
Where a contract is not contrary to public order or good morals, LSA-C.C. Art. 11 permits an individual to waive personal rights that the law has established. The codal article provides:
"Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order on good morals.
But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."
Sowela, BESE, and Travelers urge that the contract which Mrs. Whittington signed was validly executed and not in contravention of Civil Code Article 11. In support of their position four cases are cited: Forsyth v. Jefferson Downs, Inc., 152 So.2d 369 (La. App. 4th Cir.1962), writ refused 244 La. 895, 154 So.2d 767 (1963); Celestin v. Employers Mutual Liability Insurance Co. of Wisconsin, 387 F.2d 539 (5th Cir.1968); Battig v. Hartford Accident & Indemnity Co., 482 F.Supp. 338 (W.D.La.1977), affirmed 608 F.2d 119 (5th Cir.1980); and, Robillard v. P. & R. Racetracks, Inc., 405 So.2d 1203 (La. App. 1st Cir.1981).
The first Louisiana case which bears on the determination of the public policy question was Sandel & Lastrapes v. City of Shreveport, 129 So.2d 620 (La.App. 2nd Cir. 1961). That case stands for the broad proposition that: "It is contrary to public policy to allow a contractee to stipulate exemption from negligent acts which cause injury."
Since Lastrapes, supra, was first penned only five Louisiana cases have dealt with the public policy issue herein presented. Three of the cases, Forsyth v. Jefferson Downs, Inc., supra, Celestin v. Employers Mutual Liability Insurance Co. of Wisconsin, supra, and, Robillard v. P. & R. Racetracks, Inc., supra, are readily distinguishable, as recognized in Diamond Crystal Salt Company v. Thielman, 395 F.2d 62 (5th Cir.1968), which held:
"There is clearly a distinction between holding that public policy forbids a contract whereby an attempt is made to prospectively absolve one of liability for injuries negligently caused through instrumentalities in his exclusive control and holding that public policy allows a contract whereby one agrees to assume the risk of injuring himself when he is apprised of the nature of a dangerous condition and voluntarily continues to act."
The fourth case, Battig v. Hartford Accident & Indemnity Co., supra, involves the execution of a release by a parent in connection with the enrollment of their mentally retarded child in a parochial boarding school. That case involved multiple defendants who, with the exception of the parochial school, amicably settled with the plaintiffs. In its discussion of that release the court relied upon an intent analysis based on Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977), and upheld the release. In Battig, supra, the contracting parties to the release could freely and deliberately contract *242 to release from any and all liabilities. The element of consent was a valid consent.
Under our civilian tradition a release is viewed as a contract. Richardson v. Ward, 202 So.2d 327 (La.App. 1st Cir.1967), writ refused, 251 La. 389, 204 So.2d 573 (1967). In order for a release or waiver to have legal validity it must possess the essential elements of any other contract. Branch v. Alexander, 231 La. 487, 91 So.2d 767 (1956). Consent is an essential element of a contract. LSA-C.C. Arts. 1779, 1797. The consent of each party to a contract must be a free and deliberate exercise of the contracting party's will. LSA-C.C. Art. 1819.
Although Mrs. Whittington signed a document which stated that she agreed to voluntarily participate in the trip to M.D. Anderson Hospital, the context surrounding the execution of that document negates her statement. The school trip for the senior nursing students occurred annually. Before leaving on the field trip, form "releases" were distributed to all of the students. Twelve credit hours (double the normal hours earned per day) were earned for participating. The school did not offer alternative classes for any student who chose not to participate in the field trip. The circumstances attending the execution of the release clearly show that the parties were not dealing at arm's length and upon an equal footing. Sowela dictated the terms of a purported release of any and all liabilities in an attempt to release it from a reasonably foreseeable danger. Under these circumstances we find that Mrs. Whittington could not give her free and deliberate consent. Public policy forbids the release whereby an attempt was made to prospectively absolve Sowela of liability for injuries negligently caused through instrumentalities in the exclusive control of Sowela.
We therefore find that the trial judge was correct in sustaining plaintiffs' motion in limine to preclude introduction of evidence concerning the "releases".

REMARRIAGE
The plaintiffs utilized the motion in limine to prevent the defendants from introducing evidence of the remarriage of Carlyle Phillip Whittington after the death of Wanda Whittington. Sowela's purpose in opposing the motion was for the mitigation of damages.
McFarland v. Illinois Central Railroad Co., 241 La. 15, 127 So.2d 183 (1961) controls this issue. In Lofton v. Cade, 359 So.2d 1074 (La.App. 3rd Cir.1978), writ refused 360 So.2d 1177 (La.1978) we reaffirmed McFarland, supra, and stated:

"The Louisiana jurisprudence is well settled that the remarriage or engagement to remarry of a surviving spouse can have no effect upon that spouse's right of recovery, and is not to be considered in mitigation or reduction of the damages otherwise due. In McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183 (1961), the Supreme Court stated that ratio decidendi of this doctrine is that the loss suffered by the surviving spouse is determinable by conditions which exist at the date of the wrongful death, as this is the time when a right and a cause of action for the damages arises; and that the tort feasor will not be permitted to show, and rely on, and hence to benefit from, a remarriage, or an intended remarriage in seeking a reduction of the damages for which he is responsible."

We therefore find the trial judge correctly excluded the evidence.

HEARSAY
Sowela, BESE, and Travelers attempted to elicit testimony from three nursing school instructors regarding purported conversations which they had with Mrs. Whittington before her death concerning marital problems which existed between the decedent and Carlyle Whittington. The trial judge correctly excluded this testimony as being hearsay evidence. "The only declarations by a person since deceased, which are admissible as exceptions to the hearsay rule, are dying declarations, statements *243 against interest and in rare instances pertaining to family history, relationship and pedigree, where they are received as a matter of necessity." Miller v. Miller, 226 La. 273, 76 So.2d 3 (1954); Heap v. Newark Ins. Co., 129 So.2d 801 (La.App. 1st Cir.1961); Reed v. Thomas, 355 So.2d 277 (La.App. 2nd Cir.1978), writ denied, 357 So.2d 1153 (La. 1978); Baker v. Life General Sec. Ins. Co., 405 So.2d 1162 (La.App. 1st Cir.1981). The testimony in this case was hearsay and did not fall within any of the recognized exceptions to the hearsay rule.

NATIONAL UNION COVERAGE
As a result of the rental agreement Jean Teel signed with E.J. McFillen, d/b/a American International Rent-A-Car, National Union provided liability coverage in favor of the Whittingtons for the damages caused by the negligent operation of the van. Since the amount of coverage was a legal question its determination was reserved to the trial judge who concluded that the limits of liability under the insurance contract was $10,000. We agree.
The rental agreement which Jean Teel signed provided the following definition of the word "customer":
"... in consideration thereof, Customer, meaning the person(s) signing this Agreement and any other party to whom the charges incurred are billed at the express direction of such party or the person signing this Agreement, both being jointly and severally liable for such charges, agree to the following ..."
Under the clear and unambiguous terms of the rental agreement the customer is defined as being either the person signing the rental agreement or the party to whom the rental charges are billed. Jean Teel signed the agreement as customer; her name and address appear under the data portion of the agreement which pertains to "customer"; Jean Teel paid for all of the charges; Sowela received no bills as a result of this rental transaction. Under the definition of the rental contract we reach the inescapable conclusion that Jean Teel was the customer.
The liability coverage of the rental contract provided:

Customer is covered by an automobile liability insurance policy with limits of liability for bodily injury including death equal to the GREATER OF:

a) The limits of liability under the Customer's personal automobile liability insurance policy in force as of the date of the execution of this Agreement, or
b) The statutory limits prescribed under the Financial Responsibility Law or other applicable statute of the state in which the Vehicle is rented.
PROVIDED HOWEVER that such limits shall not exceed $100,000.00 for each person and $300,000.00 for each accident and property damage of $25,000.00 for each accident. A copy of said policy is available for inspection at the main office of Lessor...."
Since it was stipulated that Jean Teel had a personal automobile liability insurance policy with Allstate Insurance Company in the sum of $10,000, the trial judge concluded that under the terms and conditions of the rental agreement the National Union coverage would be limited to a like amount.
The Whittingtons, Sowela, BESE, and Travelers present two arguments. First, they argue that the provision of the rental contract limiting Jean Teel's coverage under the National Union policy to that provided by her Allstate policy is invalid and unenforceable under LSA-R.S. 22:628 which requires that provisions affecting insurance coverage be attached to the policy. R.S. 22:628 states in pertinent part:
"No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance."
They argue that in order to determine insurance coverage a two-step reference procedure (from the endorsement of the National *244 Union policy to the rental agreement and from the rental agreement to Jean Teel's personal automobile liability policy) is required. This argument and the cases cited in support thereof, Jones v. Breaux, 289 So.2d 110 (La.1974); Spain v. Travelers Insurance Company, 332 So.2d 827 (La.1976); and LeBoyd v. Louisiana Transit Co., 375 So.2d 749 (La.App. 4th Cir.1979), were meritorious prior to the 1977 amendments to R.S. 22:628. However, under the current wording of that statute, incorporation by reference as utilized in the National Union policy is permissible. Accordingly, we find no merit to this first argument.
Second, they argue that because the jury found Jean Teel to be an agent of Sowela, that Sowela became the "customer" under the rental agreement and coverage under the National Union policy should be $100,000. As an agent, Jean Teel bound Sowela to the terms of the rental contract, including the restricted definition of "customer". Under the contract definition of customer, Sowela could have been treated as a customer only if the rental agency had been expressly directed to bill it for the van rental. No such directive was ever effected.
Accordingly, the trial judge was correct in limiting the National Union policy to $10,000.

AGENCY-SERVANT STATUS
The trial judge and the jury found that Jean Teel was acting as the agent for Sowela when she rented the van and also in her operation of the van. Sowela, BESE, and Travelers disagree with these findings and further urge that even if Jean Teel was an agent for Sowela, under the rationale of Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968), they are not liable for the tortious acts of their agent. Certain restrictions were placed by the school administration, e.g.: the trip had to have an educational purpose relating to nursing; travel had to be done on a Friday and had to be completed in one day; the students could not travel in their private vehicles; two nursing instructors were required to attend and supervise the trip; and, the trip had to meet with the approval of the director of Sowela.
The trip to M.D. Anderson Hospital was a school function. Its purpose was to expose the students and supervisory personnel to actual nursing and medical experiences. Although no student was forced to attend, there existed a strong compulsion for their attendance. In order to graduate from Sowela a nursing student was required to accumulate a certain number of hours. Attendance at this field activity yielded twice the number of daily credits earned. This sanction clearly impresses us of the close educational function assigned to this activity and the high priority established by the school to attend. Additionally, Sowela required that school supervisory personnel be in attendance and paid their expenses for the trip.
The question of agency involves an analysis of the relationship between the principal and agent, and the right of control which the former has over the latter. In this case the senior class was to attend a field trip promoted by Sowela. Transportation of the students and two instructors for the trip was delegated by Sowela to the senior class, but subject to Sowela's approval. There existed a close connexity between the authorized activity and the delegation of responsibility regarding transportation. The two activities are integral and inseparable. Jean Teel had no reason to independently rent the van. Her actions were as an agent for Sowela in securing transportation for the field trip.
Sowela, BESE and Travelers urge that even if Jean Teel was an agent of Sowela in driving the van she was not a servant of the school; therefore, her negligence could not be imputed to Sowela. In support of their contention they cite the case of Blanchard v. Ogima, supra.
In Blanchard the court held that a principal is not liable for the harm caused by the negligent activities of a non-servant agent. It found that Ogima was an independent free lance agent equating him to be a non-servant *245 agent. Rather than disregard the holding of the Blanchard decision as being distinguishable on the facts, we conclude as did the trial judge, that the principles of law enunciated in Blanchard when applied to the case sub judice mandate a different result. The trial judge's well reasoned opinion clearly distinguishes Blanchard, as follows:
"This court, of course, does not disagree with the Supreme Court's enunciation of the principles of law in Blanchard, but it does believe that the facts of that case are readily distinguishable from the facts of this case. It further believes that the same principles of law when applied to the facts of this case dictate a different result than that reached in Blanchard. In Blanchard, the court held that a principal is not liable for the harm caused by negligent physical activities of a `non-servant agent.' It found the defendant, Ogima, to be a non-servant agent. He was described as an independent free-lance agent or salesman for one sale. The court stressed the lack of control by the principal over the agent.

The relationship between a car owner and a free-lance car salesman bears no resemblance to the relationship between a school and a person commissioned to drive students on a compulsory school function trip.
These nursing students were as compelled to go on this field trip as any student of any school is ever compelled to attend any school function. The only compulsion that can be used upon any student in any school is the use of sanctions in the event he fails to attend. The sanctions may include loss of credits, a failing or lower grade, expulsion, etc. In this sense, he is required to attend. At Sowela, the nursing students are required to accumulate a certain number of hours to graduate. If they went on this field trip to Houston, they would be given two days hourly credits. Of course, they did not have to go on the field trip. No one could force them to do so, but if they did not go, the sanction of loss of two days hourly credits would be imposed. The field trip was as much a required school function as any classroom activity.
The mode of transportation was not optional to any one student. Use of private cars was prohibited by the school. They had to go as a group-an act of control over the student. Two instructors whose expenses were paid by Sowela were to go with themanother act of control. The date of the trip was subject to the school's approval.
While Sowela did not designate the particular conveyance to be used or the particular driver, it permitted, in fact, required, the class to select the means of transportation, but subject to the director's approval. It is a further interesting fact that the only arrangement not subject to approval (control) was the selection of the driver. An implied agency relationship was created with the individual selected by the class to rent the van and with the individual selected by the class to drive the van.

Mrs. Teel was not simply a non-servant agent as was the salesman in Blanchard. She was an agent who was also a servant. She served the school by assisting it in the performance of its function as a school."

The key principle enunciated by Blanchard in determination of the "agent-servant" status was: what right of control does the principal have over the physical movements of the agent? As discussed above, Sowela maintained great control over the physical activities of Jean Teel. It mandated the time and date of the proposed field trip. It had final approval of the destination to be visited. It had authority (whether or not actually utilized) over the mode of transportation and the selection of the driver. It had continuing control over the actions of the driver and the students by placing supervisory personnel to be in attendance with the senior nursing class at all times during the field trip.
In opposition, Sowela, BESE and Travelers assert that there existed no economic relationship between Jean Teel *246 and the school. Although the existence of an economic relationship between principal and agent may be utilized as a criteria for the determination of the existence of a master-servant relationship, it is not essential to that determination. In order for an agency relationship to exist it is not a requirement that the agent receive compensation for the services rendered. Aucoin v. Hanson, 207 So.2d 834 (La.App. 3rd Cir. 1968). The same is true of the master-servant relationship. Smith v. Foucha, 172 So.2d 318 (La.App. 4th Cir.1965), writ refused 247 La. 678, 173 So.2d 542 (La.1965); Bates v. Lagars, 193 So.2d 375 (La.App. 2nd Cir.1966), writ refused 250 La. 267, 195 So.2d 146 (1967); Ricker v. Thompson, 394 So.2d 831 (La.App. 4th Cir.1981).
In summation it is the employer's right of control over the time and activities of the agent which is determinative of the status of servant. Blanchard, supra; Ricker, supra. Sowela had as much control over the time and physical activities of Jean Teel as any employer has over a compensated driver-employee. Accordingly we hold that the evidence fully supports the findings of the trial judge and jury that Jean Teel was the agent-servant of Sowela in both procuring the van and in its actual operation.

JOINT VENTURE
A joint venture is an undertaking by two or more persons to combine their property, capitol, labor or skill in any combination of these elements in the conduct of a particular line of trade or general business for joint profits, thus creating the status of a partnership, although the facts do not show a formal partnership. LSA-C.C. 2801; Huffman Technical Drilling, Inc. v. Smith, 424 So.2d 435 (La.App. 5th Cir.1982). In order to constitute a joint venture involving a vehicle, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the vehicle. Squyres v. Baldwin, 191 La. 249, 185 So. 14 (1938). As discussed in Frazell v. United States, 213 F.Supp. 457 (W.D.La.1963) reversed on other grounds 335 F.2d 487 (5th Cir.1964), writ denied, 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965), "[t]he ultimate criterion is whether the parties actually intended to enter a joint venture, and, in arriving at this determination there are no hard and fast rules fixing the legal requisites. Each case must be considered sui generis. ..."
Although the nursing students shared a common destination, their individual interests were inseparable from that of Sowela. This was a school trip. There was no intention among the individual nursing students to form a joint venture separate from their enrollment as students at Sowela. The existence of the trip rested solely with Sowela and its administrative staff. The fact that the nursing students raised the funds for the entire expense of the van rental and gasoline is insufficient to establish the creation of a joint venture. See Orrell v. Southern Farm Bureau Casualty Ins. Co., 172 So.2d 180 (La.App. 3rd Cir. 1965), reversed on other grounds 248 La. 576, 180 So.2d 710 (1965).
The jury and the trial judge found no joint venture to have existed. There was no intent to form a joint venture and Mrs. Whittington lacked the right to control the van or the manner of its operation. Sowela, even though it chose not to exercise its control, had the sole right, actual and theoretical, to control the use of the van and its manner of operation.
We concur with the conclusion of the jury and the trial judge in finding that neither Wanda Whittington, nor her senior nursing class was involved in a joint venture with Sowela.

TEEL'S NEGLIGENCE
Sowela, BESE and Travelers contend that the proximate cause of the accident was the "18-wheeler" and not any negligence by Jean Teel. Both the trial judge and the jury found that Jean Teel was negligent in her operation of the van.
*247 From the outset we note that there was no collision between the "18-wheeler" and the van. The tractor-trailer was "tail-gating" the van which excited Jean Teel. She lost control which caused the van to overturn, killing Wanda Whittington and another student. The evidence clearly establishes that Jean Teel was traveling at an excessive rate of speed and failed to maintain proper control of the van.
The defendants contend that the doctrine of sudden emergency should apply. We disagree. In order to successfully assert the doctrine of sudden emergency it must be clearly established that the claimant's own negligence did not precipitate the emergency. Palmieri v. Frierson (Palmieri v. Fireman's Fund Insurance Company), 275 So.2d 214 (La.App. 1st Cir.1973), affirmed 288 So.2d 620 (La.1974); Powell v. State Farm Mutual Insurance Co., 304 So.2d 798 (La.App. 3rd Cir.1974) writ denied 309 So.2d 339 (La.1975).
We therefore find that the jury and trial judge were correct in their finding of negligence by Jean Teel.

SOWELA'S INDEPENDENT NEGLIGENCE
The jury found independent negligence on the part of Sowela but the trial judge in his written reasons did not decide this issue. Those written reasons deal solely with the question of vicarious liability. Since the trial judge did not determine the issue of independent negligence on the part of Sowela, plaintiffs assign as error and take the position in their brief that the trial judge found no independent negligence on the part of Sowela and ask for a determination of this issue. Taking the position of contradictory findings as contended by plaintiffs, we must make our own determination in order to harmonize the judgments. See Thornton v. Moran, 348 So.2d 79 (La. App. 1st Cir.1977), writs denied 350 So.2d 897, 898, and 900 (La.1977).
We find that Sowela owed a duty to its students to provide transportation under safe conditions. The student trip to M.D. Anderson Hospital in Houston, Texas was a school function. We have consistently held that a greater degree of care must be exercised if students are required to engage in an activity where it is reasonably foreseeable that an accident or injury may occur. Prier v. Horace Mann Ins. Co., 351 So.2d 265 (La.App. 3rd Cir.1977), writ refused 352 So.2d 1042 and 1045 (La.1977). Transportation of 16 students and 2 instructors on a highly traveled interstate highway for a great distance is an activity where it is reasonably foreseeable that an accident may occur.
Sowela made the field trip a part of its curriculum but failed to have a uniform policy for the transportation of its students. Sowela remained in full control requiring the students to travel in a group and not allowing them to utilize their private vehicles. Sowela knowingly approved of an overcrowded condition in the van by allowing 18 persons to travel in a van designed to carry 15 passengers.
The 2 supervisors were on duty just as though they were in the classroom. Numerous complaints were heard in the van about the driving of Jean Teel, and comments about her ability to drive were made to the instructional personnel who failed to take any corrective measures to protect the students.
Sowela failed to ensure that a trained competent driver would be used to transport the students. Sowela's only requirement for the driver of the van was to have a valid driver's license. We find the fulfillment of this minimal requirement fails to meet the duty of the school to provide a driver qualified and trained in transporting a large group of students over a long distance on a heavily traveled interstate highway. The record reflects that, under these circumstances, Jean Teel was obviously an inexperienced driver. If the school had properly fulfilled its duty of providing a trained driver, e.g. a licensed chauffeur, the particular risk encountered may well have been averted. The failure of Sowela to meet this requirement was basis enough to justify the jury's determination of independent *248 negligence on the part of Sowela. The evidence as a whole clearly establishes the independent negligence of Sowela.
Accordingly, if the fact that the trial judge made no determination on the issue of independent negligence of Sowela, and if this constitutes a finding of no independent negligence on the part of Sowela as contended by plaintiffs-appellants, then we find the trial judge committed manifest error in not finding Sowela negligent and we reverse the trial judge's determination of this fact.

THIRD PARTY DEMANDS AGAINST CONTINENTAL
This issue involves the third party demand brought by BESE and Sowela against Continental.
Continental issued a comprehensive general liability insurance policy insuring BESE and Sowela for "all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage ... caused by an occurrence." Coverage was limited by specific exclusions provided in the policy in Section 4 of endorsement G404 which reads:
"4. Transportation of Pupils: With respect to the transportation of students or pupils, exclusions (b) and (e) of the policy are replaced by the following: The insurance does not apply to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft, automobile or watercraft owned, operated or hired by or for the insured or any officer, employee or member of the teaching, supervisory or administrative staff thereof. For the purpose of this exclusion the word `hired' shall be deemed to include any contract to furnish transportation of pupils to and from schools."
Continental's policy did not provide coverage to Sowela for its liability arising out of the operation or use of an automobile. Coverage of that type was provided by Travelers.
Having already determined that Mrs. Teel was an agent for Sowela, we find that Sowela falls within the above exclusion. We therefore find the trial judge to have been correct in his dismissal of the third party demands against Continental.

QUANTUM
The defendants argue that the award of damages are excessive. The plaintiffs contend that the damages are inadequate. We have before us a bifurcated trial where the award to the plaintiffs by the trial judge and the jury are in different amounts. The jury gave a lump sum award of $102,000 to Carlyle Phillip Whittington and $300,000 to Michael Shane Whittington. The trial judge itemized his award granting to Carlyle Phillip Whittington $179,395 and to Michael Shane Whittington $226,781.
In our careful review of the record we do not find the trial judge's award nor the jury's award to be excessive or inadequate, but within the sound discretion of each. However, with two varying awards we are compelled to harmonize the differing awards in accordance with the standard set forth in Thornton v. Moran, supra. Further, this court held in Bunkie Bank & Trust Co. v. Avoyelles Parish Police Jury, 347 So.2d 1305 (La.App. 3rd Cir.1977) that where the judge and the jury reach conflicting decisions, it is not necessary for the trial judge to grant a new trial in an effort to seek a jury verdict which would be in harmony with the judge's view of the case, and, the preferable procedure is that the court of appeal harmonize any conflict in decisions by the jury and the judge.
We therefore select and affirm the award of damages of the trial judge, as follows:

 HUSBAND SON
Economic loss $124,281 $124,281
Loss of love and affection 50,000 100,000
Pain and suffering of Mrs.
Whittington prior to her
death 2,500 2,500
Funeral expenses 2,614 -
 _____ _____
 $179,395 $226,781

*249 DECREE
For the foregoing reasons the judgment of the trial court is hereby amended so as to be consistent with the views expressed above in the award of damages and finding Sowela to be negligent. In all other respects the judgment is affirmed. The amended judgment shall read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of CARLYLE PHILLIP WHITTINGTON, on behalf of the minor, MICHAEL SHANE WHITTINGTON against JEAN B. TEEL, SOWELA TECHNICAL INSTITUTE, the BOARD OF ELEMENTARY AND SECONDARY EDUCATION, ALLSTATE INSURANCE COMPANY, TRAVELERS INSURANCE COMPANY, and NATIONAL UNION FIRE INSURANCE COMPANY, in solido, in the amount of TWO HUNDRED TWENTY-SIX THOUSAND SEVEN HUNDRED EIGHTY-ONE DOLLARS AND NO/100 ($226,781.00) together with legal interest from judicial demand until paid.
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of CARLYLE PHILLIP WHITTINGTON, individually, against JEAN B. TEEL, SOWELA TECHNICAL INSTITUTE, the BOARD OF ELEMENTARY AND SECONDARY EDUCATION, ALLSTATE INSURANCE COMPANY, TRAVELERS INSURANCE COMPANY, and NATIONAL UNION FIRE INSURANCE COMPANY, in solido, in the amount of ONE HUNDRED SEVENTY-NINE THOUSAND THREE HUNDRED NINETY-FIVE DOLLARS AND NO/100 ($179,395.00) together with legal interest from judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the total liability of TRAVELERS INSURANCE COMPANY under the judgments set forth above be limited to its policy limits of $300,000 together with legal interest on the amount of said policy limits from judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the total liability of NATIONAL UNION FIRE INSURANCE COMPANY under the judgments set forth above be limited to its policy limits of $10,000, together with legal interest on the amount of said policy limits from judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the total liability of ALLSTATE INSURANCE COMPANY under the judgments set forth above be limited to its policy limits of $10,000 together with legal interest on the amount of said policy limits from judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the said jury verdict be, and it is hereby made the judgment of this Court, and, accordingly, judgment is rendered herein against third party plaintiffs, JEAN B. TEEL, ALLSTATE INSURANCE COMPANY, E.G. McFILLEN d/b/a AMERICAN INTERNATIONAL OF LAKE CHARLES, TERRY B. MACK CORPORATION, NATIONAL UNION FIRE INSURANCE COMPANY, SOWELA TECHNICAL INSTITUTE, THE STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION, TRAVELERS INSURANCE COMPANY, AND CHRYSLER CORPORATION, and in favor of third party defendant, ACME TRUCK LINE, INC., rejecting all of the demands of the third party plaintiffs and dismissing their suit, at their cost.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of third party defendant, CONTINENTAL INSURANCE COMPANY, and against third party plaintiff, SOWELA TECHNICAL INSTITUTE, rejecting all demands set forth in said third party demand, with prejudice.
All costs of the trial court are assessed to defendants, JEAN B. TEEL, SOWELA TECHNICAL INSTITUTE, BOARD OF ELEMENTARY AND SECONDARY EDUCATION, TRAVELERS INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY and ALLSTATE INSURANCE COMPANY.
*250 For the above and foregoing reasons the judgment of the trial court is affirmed as amended. Costs of this appeal are assessed to the defendants.
AFFIRMED AS AMENDED.
STOKER, J., concurs and assigns written reasons.
STOKER, Judge, concurring.
I fully concur in the holding of the majority opinion in this case. This concurrence is prompted because I entertain doubt that a master-servant relationship may be found absent a close economic relationship between a master and servant in addition to the element of close control of the employer. The majority holds it is not a requirement in order for an agency relationship to exist that the agent receive compensation for the services rendered and that the same holds true for a master-servant relationship. For these propositions the majority cites the cases of Aucoin v. Hanson, 207 So.2d 834 (La.App. 3rd Cir.1968); Smith v. Foucha, 172 So.2d 318 (La.App. 4th Cir.1965), writ refused 247 La. 678, 173 So.2d 542 (1965); Bates v. Lagars, 193 So.2d 375 (La.App. 2d Cir.1966), writ refused 250 La. 267, 195 So.2d 146 (1967); and Ricker v. Thompson, 394 So.2d 831 (La.App. 4th Cir.1981).
Sowela Technical Institute, State Board of Elementary and Secondary Education and Travelers Insurance Company rely on the case of Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (La.1968) for the proposition that no vicarious liability flowed from whatever relationship existed between Sowela and Jean B. Teel. The Blanchard case held that vicarious liability of the sort sought to be imposed here must be founded upon a master-servant relationship. The relationship must be based on a "close economic relationship" as well as close control. A servant is defined as "one who offers his personal services for a price." Cf. LSA-C.C. art. 163.
With the exception of Ricker v. Thompson, supra, the four cases cited in the majority opinion were decided prior to the rendition of the Louisiana Supreme Court's decision in Blanchard v. Ogima, supra. In the Ricker case the Court of Appeal for the Fourth Circuit found no employer-employee relationship. Hence, the statement in Ricker that "lack of an economic relationship will not bar the existence of a principal-agent relationship" was not particularly significant. The case was decided on the absence of control by the alleged employer. Moreover, the statement just quoted was not original with the Court of Appeal, but was quoted from the trial court's reasons for judgment with which the Court of Appeal stated it found no error. The Court of Appeal in Ricker then quoted at length from Blanchard v. Ogima, including that portion which holds that a close economic relationship (based on a price for services) is necessary to support the relationship. The two propositions are patently inconsistent.
In view of the in-depth consideration given in Blanchard v. Ogima to the principal-agent relationship necessary to support vicarious liability, the soundness of the Hanson v. Aucoin line of cases is questionable. In Bates v. Lagars the Court of Appeal for the Second Circuit held that a master-servant relationship may arise by implication and is applicable "where a volunteer renders services for another under circumstances such as those shown to exist in the instant case." The circumstances were that a passing motorist stopped and was using his vehicle in an attempt to assist another motorist to get his vehicle out of the ditch when the plaintiff's vehicle ran into the volunteer's vehicle. In denying writs the Louisiana Supreme Court stated: "On the facts found by the Court of Appeal we find no error of law in its judgment." Nevertheless, the Supreme Court in the following year decided Blanchard v. Ogima without mention of Bates v. Lagars or the Aucoin v. Hanson line of cases.
In view of the tenuous nature of the authority of the holding in the Aucoin v. Hanson line of cases, the question of independent negligence on the part of Sowela becomes quite significant. As ably demonstrated by the majority opinion in this case, Sowela exercised tight control of the field trip arrangements and conditions through laying down rules. It avoided the administrative chore of making actual arrangements *251 for hired transportation including a driver by shifting that chore to the student nurses. Nevertheless, Sowela maintained such actual control that its role was little different from what might have been the case had Sowela actually rented the van and provided its own driver. No one would contest Sowela's liability under such circumstances should the driver negligently caused harm to a passenger.
Under the circumstances of this case, Sowela, BESE and Travelers Insurance Company are liable to plaintiffs under Articles 2317 and 2320 of the Louisiana Civil Code. The factual circumstances necessary to support this liability (including the fact that Sowela could have prevented the accident and did not) was determined by the jury. The trial court's written reasons for judgment deal with the question of vicarious liability only. No mention is made of the question of independent negligence of Sowela. If this constitutes rejection of plaintiff's demands on that ground, I agree that the trial court should be considered as having committed manifest error in this respect. Inasmuch as the trial court found vicarious liability, the judgment against Sowela and BESE as state agencies was supported, and there is no error in the judgment.
For these reasons I concur in the majority opinion.