193 So.2d 375 (1966)
Fred BATES et ux., Plaintiffs-Appellees,
v.
Courtney J. LAGARS et al., Defendants-Appellants.
No. 10707.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1966.
Rehearing Denied January 4, 1967.
Writ Refused February 24, 1967.
*377 Bodenheimer, Looney & Jones, Shreveport, for appellants.
Gahagan & Gahagan, Natchitoches, for appellees.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This action for damages arose out of a motor vehicle collision during the night of August 21, 1965, on State Highway 1 north of Armistead. Directly involved were plaintiffs' Chevrolet station wagon and defendant Lagars' Ford. Indirectly involved was a pickup truck of defendant Harvey H. Samuels, Jr. Made defendant in addition to Lagars and Samuels was the latter's insurer, Casualty Reciprocal Exchange.
Plaintiffs' charges of negligence against Lagars and Samuels are based upon the acts of these defendants in the use of Lagars' vehicle to pull Samuels' truck back onto the highway from which it had skidded and run into the roadside ditch. More specifically, the charges consist of the blocking of the highway on a dark, rainy night without warning to traffic, either by the placement of flares or the stationing of a flagman, and of not maintaining a proper lookout. Samuels and his insurer, after denying that Samuels was guilty of negligence contributing to the occurrence, pleaded, in the alternative, that plaintiff Fred Bates, the driver of plaintiffs' vehicle, was guilty of contributory negligence by virtue of his excessive speed and his failure to *378 keep a proper lookout or to maintain control of his vehicle. Lagars made no formal appearance at the trial.
After trial and on confirmation of a default against Lagars, the plea of contributory negligence on the part of the remaining defendants was sustained and the demands of plaintiff Fred Bates against them were rejected. There was judgment, however, in favor of plaintiff Mrs. Doris Bates against Lagars, Samuels, and the Casualty Reciprocal Exchange, in solido, in the principal sum of $3,000.00. From this judgment, Samuels and his insurer appealed. Plaintiffs have answered the appeal, praying that the award in favor of Mrs. Bates be increased to $10,000.00, that the judgment rejecting plaintiff Fred Bates' demands be reversed and that he be awarded damages in the sum of $2,134.14.
It appears appropriate to first point out that plaintiff Fred Bates did not appeal from the judgment rejecting his demands. Defendants' appeal is from the judgment rendered against them in favor of Mrs. Bates. The answer of Fred Bates to this appeal is ineffective to bring before this court the issues which existed between him and the defendants in the trial court. In Billiot v. Noble Drilling Corporation (La. App.) 102 So.2d 569 (Orl.1958writs granted and judgment reversed on grounds other than those for which the case is cited [236 La. 793, 109 So.2d 96 (1959)]), a husband and wife instituted an action to recover damages on their own behalf as well as on behalf of their minor children. The individual demands of the husband and wife were rejected, but there was judgment in favor of the minors. The defendants appealed. With reference to the wife's answer to the appeal, wherein she prayed for an amendment of the judgment so as to allow her claim for personal injuries, the court stated:
"Since no appeal was or could be taken by the defendants [from the judgment] in their favor against her, and since she did not take an appeal, her answer is ineffective to bring her before this Court."
On behalf of the defendants-appellants, Samuels and his insurer, it is urged that no independent acts of negligence were established against Samuels in allowing his truck to leave the highway; nor, it is claimed, was there established any basis for holding Samuels responsible for Lagars' acts under the doctrine of respondeat superior or under the principles governing joint adventure or joint tort-feasors.
That Samuels was free of negligence in the occurrence wherein his vehicle left the highway abundantly appears from the record. The night was dark and the surface of the highway was wet and slippery. Samuels, in his pickup truck, was proceeding in a southerly direction on the highway when a preceding vehicle, whose driver remains unknown, suddenly stopped in front of him, whereupon, to avoid a rearend collision, Samuels applied his brakes and his vehicle skidded off the highway, coming to rest in the west roadside ditch with its front facing in a northerly direction about six to ten feet from the highway surface.
While Samuels' truck was in this position, Lagars, who was also proceeding in a southerly direction, observed, in passing, that someone was in trouble. Hence, he reversed his course, returned to the scene, and offered assistance. Lagars, with the assistance of Samuels' truck's own power, endeavored to hand push the truck back onto the highway. This effort failed.
The driver of a third vehicle stopped and likewise offered his assistance. He and Lagars, again with Samuels applying the truck's own power, endeavored to hand push the vehicle back onto the highway, but were unable to do so. The third motorist, whose identity remains unknown, suggested an effort be made to pull the truck onto the highway and furnished a chain to be attached to the Lagars' vehicle for that purpose. This chain was attached to the *379 front of Samuels' truck and the rear of Lagars' vehicle. Samuels, occupying the driver's position in his truck, started his engine and Lagars began to pull, whereupon the chain came unfastened. The unidentified motorist reattached the chain, whereupon Lagars glanced to the rear to ascertain that the chain was tight before applying the power of his vehicle, while Samuels remained in his truck, with his engine running, to give assistance. At this point, plaintiffs' vehicle, approaching from the north, struck the Lagars vehicle. Following the accident, the Lagars car extended about six feet upon the concrete surface and angled across the highway. Bates' station wagon was also upon the highway. The right fronts of the vehicles sustained the major damages inflicted upon the cars.
The judgment of the trial court, predicated upon findings that defendant Lagars was negligent and that plaintiff Fred Bates was contributorily negligent, is final as to them inasmuch as neither appealed.
However, as to the appellants, Samuels and his insurer, the question of the negligence vel non of Lagars is presented as an issue. The record establishes and it is conceded that the effort to pull Samuels' truck back onto the highway was conducted without the placement of flares or other warning devices and without the services of a flagman to warn motorists of the danger inherent in such a maneuver. Neither Samuels nor Lagars saw the Bates vehicle prior to the impact.
Under ordinary circumstances the primary duty of avoiding a collision rests upon the driver of a vehicle entering a public highway. The law is clear that he shall yield the right of way to all approaching traffic so close as to constitute an immediate hazard. LSA-R.S. 32:124. We can conceive of no less duty upon those engaged in pulling a disabled vehicle back onto the highway. Obviously, the danger is even greater and requires the exercise of extraordinary precaution. A driver engaged in such an activity should maintain a constant lookout for vehicular traffic upon the highway and not enter the highway until it becomes apparent to him that he can do so safely. The violation of these principles cannot be viewed in any other manner than as constituting negligence of the grossest character and, under the circumstances shown to exist here, a direct factor in the occurrence of the accident.
Appellants contend, however, that Samuels was free of negligence and that the acts of negligence of which plaintiffs complain were independent acts of Lagars. With this we do not agree as it was as much the duty of Samuels as it was of Lagars to see that flares or warning devices were placed on the highway and to see that a flagman was stationed to warn approaching traffic of the obvious danger to be encountered in the maneuver. Moreover, Samuels admitted he was not keeping a lookout and never saw Bates' vehicle until the impact of the collision. Failure, in these respects, constitutes independent, actionable negligence on the part of Samuels.
It is also obvious, under the circumstances of this case, that Samuels had the right to direct and control the operation of removing his car from the ditch; he was present and actively assisting in the effort. Therefore, whatever acts of negligence are chargeable to Lagars are imputable to Samuels. Waguespack v. Savarese (La. App.) 13 So.2d 726, 727, 731-732 (Orl. 1943).
Nevertheless, it is stressed that Lagars was a mere volunteer who offered and performed his services gratis, with no agreement with respect to or expectation of remuneration. The record, however, fully establishes that both Samuels and Lagars were together, pursuing a common course of action to reach a certain goal and to accomplish a certain purpose, that is, the removal of Samuels' vehicle from the ditch onto the highway. The action taken was exclusively in Samuels' interest, and Lagars' services were accepted without protest.
*380 The doctrine of respondeat superior is usually relied upon as the basis for liability of a master for injuries to third persons caused by the acts or omissions of his servant. The general rule is that, to render a person liable for injuries under this doctrine, the relationship of master and servant must be shown to have existed between the wrongdoer and the person sought to be charged with the result of the wrong at the time of the injury and with respect to the very transaction out of which the injury arose. The existence of the relationship, so as to fix liability on the part of one person for the acts of another, depends upon the facts and circumstances that may be established in a particular case.
The relationship of master and servant may, however, arise by implication and there need be no express contract of employment. This rule has been stated as follows:

"While the relation of master and servant arises out of contract, and the assent of both parties is essential, in order to constitute the relationship of master and servant, in so far as the liability of the former for the acts of the latter is concerned, there need be no express contract of employment; the relation may arise by implication as well as expressly, and the relation of the parties does not depend solely on the written contract. If one knowingly and without objection receives the benefits of labor, or holds out to the public one as engaged in his service, he is liable as a master for the acts of the latter as his servant, even though the servant was, at the time of the negligence complained of, in the general employment of another; but it is not to be understood that a person can be rendered liable for injuries caused by the negligent act of a mere volunteer who, without the knowledge or assent of the former, undertook to perform services in his behalf." (Emphasis supplied.)
57 C.J.S. Master and Servant § 563c, p. 279.
This principle is applicable where a volunteer renders services for another under circumstances such as those shown to exist in the instant case. The rule is that, where a volunteer renders a beneficial service for an alleged master in the presence of the master or with the master's knowledge and is permitted to proceed without dissent, an assent may be implied and the relation of master and servant established to an extent necessary to render the master liable to third persons for the tortious acts of the volunteer done in the course of such service. Lemieux v. Leonard Const. Co. (Rhode Island) 56 A.2d 189, 192 (1947); Huffcut on Agency, 2d Ed., 293; Smith v. Foucha (La.App.) 172 So.2d 318, 321 (4th Cir. 1965writs refused).
In the latter case, involving an implied relationship of master and servant, Judge Yarrut, as the organ of the court, made this observation:
"There is no doubt that Bonds was acting as caretaker for Foucha at the time. Foucha contends Bonds was not his employee because he did not pay him. The question of pay vel non is one element of proof, but not solely determinative of the relationship of employee and employer, or principal and agent. Bonds was Foucha's tenant in a room adjoining the tavern at $5.00 per week, admittedly closed the bar and lounge at night and acted as watchman and as handyman for Foucha around the lounge and grocery with the full knowledge and consent of Foucha; for whose torts committed by Bonds in the course of his employment, Foucha is liable. LSA-C.C. Art. 2320."
The conclusion is inescapable, from the facts and circumstances of this case, that a relationship of master and servant existed between Samuels and Lagars at the time of the accident.
On the question of liability, the conclusion is likewise inescapable that Lagars was particularly negligent in not maintaining a proper lookout and in not seeing the approach *381 of plaintiffs' station wagon; also, that the Lagars car extended into Bates' traffic lane of the highway, and that these acts, together with a failure to warn approaching traffic of the danger, constituted a proximate cause of the accident.
Even if it could be said there was an absence of a master-and-servant relationship between Lagars and Samuels, that fact would afford defendants no comfort or relief. There is a basic rule of law that joint liability exists where the wrong is done by concert of action and common intent and purpose.
86 C.J.S. Torts § 37, p. 953.
The common intent of Samuels and Lagars and the purpose to be accomplished through their concerted action was, as heretofore noted, to replace Samuels' truck on the highway. Their concerted action did not end there, but, as already pointed out, extended to the negligent acts by which they endeavored to place the truck back on the highway.
Finally for consideration is the matter of the award of damages to compensate Mrs. Bates for the injuries she sustained.
Following the accident, Mrs. Bates was carried to the Huckabay Clinic and Hospital in Coushatta where she was administered first aid and kept overnight. According to Dr. Jackie Huckabay, plaintiff sustained lacerations to her face and head, and bruises and contusions over her body, particularly to her chest, left ankle and foot, and right shoulder. The lacerations on her face extended across the nasal bridge in and under the left eye, with irregular lacerations under her right eye. Her forehead was also lacerated. Numerous fragments of glass were removed from the lacerations and, on the day of trial, nodules underneath the skin of the forehead were thought to contain other fragments of glass. Thirty-two sutures were required in binding plaintiff's facial wounds. The day following the accident Mrs. Bates was transferred to the Natchitoches Parish Hospital where she was further confined for a period of two days under the treatment of her family physician, Dr. Charles E. Cook, whose findings were essentially the same as those of Dr. Huckabay. Pain was, however, noted in her chest as was swelling and tenderness in her foot and ankle. Plaintiff was seen by Dr. Cook, in his office, August 26, 1965, when some of the sutures were removed, and again August 30, 1965, when the remaining sutures were removed. During the trial Dr. Huckabay testified that the scars on plaintiff's face were not noticeable except by close observation.
Plaintiff testified that because of her disability, resulting from the injuries sustained, she was unable to do her housework for three or four weeks, and that many of the chores she could not do for a period of six to eight weeks. During this time she suffered pain in her chest, arms, and legs.
In thus reviewing the record, we are unable to find that the award was either inadequate or excessive.
For the reasons assigned, the judgment appealed is affirmed at defendants-appellants' costs.
Affirmed.
GLADNEY, J., dissents with written reasons.
GLADNEY, Judge (dissenting):
The majority opinion has the effect of attributing the negligence of Lagars to Samuels and also it finds Samuels guilty of independent actionable negligence. Immediately prior to the collision Samuels and his vehicle were in the ditch off from the highway and in my opinion he could not have been guilty of independent actionable negligence. The relationship between Lagars and Samuels was such in my opinion *382 as not to constitute that of master and servant nor may it be considered a joint venture.
I therefore respectfully dissent.
Rehearing denied.
GLADNEY, J., dissents.