621 So.2d 184 (1993)
Laura AVERY and Paul Avery, Plaintiffs-Appellees,
v.
COMMERCIAL UNION INSURANCE COMPANY and Bel-Aire Insurance Company, Defendants-Appellants.
Laura AVERY and Paul Avery, Plaintiffs-Appellees,
v.
COMMERCIAL UNION INSURANCE COMPANY, et al., Defendants-Appellants.
Nos. 91-538, 92-838.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1993.
*186 Robert Samuel Dampf, Henry Alan McCall, Lake Charles, for Laura and Paul Avery.
A.R. Johnson IV, Lake Charles, for Commercial Union Ins. Co., et al.
William T. McCall, Gregory Joseph Spicer, Lake Charles, for Bel-Aire Ins.
David Andrew Fraser, Lake Charles, for Buzzy's Wild Water Slide.
John E. Bergstedt, Lake Charles, for Cameron Police Jury and CUI Co., etc.
Before STOKER and DECUIR, JJ., and CULPEPPER,[*] J. Pro Tem.
STOKER, Judge.
This case involves issues of insurance coverage and liability for damages sustained in a rear end collision. On May 18, 1988, a vehicle owned by the Cameron Parish Police Jury and operated by August LeDoux struck the rear of the vehicle operated by Laura Avery. It appears that she was the sole occupant of the vehicle. The accident occurred inside of a cloud of black smoke which had originated from a grass fire on property adjacent to Louisiana State Highways 82 and 27 (Highway 82/27) in Cameron Parish. Buzzy's Wildwater Slide, Inc. held the property upon which the grass fire originated under lease.
Paul and Laura Avery filed suit for damages arising out of the collision. They named several defendants, including Cameron Parish Police Jury, Commercial Union Insurance Company (the alleged insurer of the Police Jury), Buzzy's Wildwater Slide, Inc., and Bel-Aire Insurance Company (the insurer of Buzzy's). Various cross-claims were filed in connection with the suit, including a cross-claim by Buzzy's against Bel-Aire; Buzzy's asserted in the cross claim that Bel-Aire provided coverage to Buzzy's for claims asserted against Buzzy's. Buzzy's filed a motion for partial summary judgment against Bel-Aire on the coverage issue. The trial court granted the motion, declaring that the Bel-Aire policy provides coverage for the claims asserted against Buzzy's. Bel-Aire appealed the summary judgment, and that appeal bears our Docket No. 91-538. We ordered that the coverage question involved in appeal Number 91-538 be consolidated with the appeal on the liability issue which is numbered 92-838 on the docket of this court.
Prior to trial on the merits, plaintiffs settled with and dismissed, among other defendants, August LeDoux, the Cameron Parish Police Jury, and Commercial Union. The loss of consortium claim of Paul Avery was dismissed on the day of trial.

TRIAL COURT ACTION
After trial on the merits, the trial court rendered judgment in favor of Laura Avery and against Buzzy's and Bel-Aire for $77,407.09. The court found no contributory negligence on Avery's part and no concurrent negligence on the part of the Police Jury, its employees, or agents. From this judgment, Bel-Aire also appeals, our Docket No. 92-838.

SUMMARY OF RULING IN THIS APPEAL
In these consolidated cases, we affirm the trial court's finding of insurance coverage, reverse the court's finding of no concurrent liability on LeDoux's part, affirm the finding of no comparative negligence on Avery's part, and affirm the award of damages.

FACTS
Buzzy Adams was the owner of Buzzy's Wildwater Slide at the time of the accident. *187 Buzzy Adams was working for Zapata Haynie at the time so that he was not on the property at the time of the accident. Buzzy Adams had asked his brother, Clay Adams, to help him clean up the property, evidently in preparation for opening the waterslide for summer business. Alton Norton, a friend of Clay and Buzzy, was assisting Clay in cleaning up the grounds.
On May 18, 1988, Clay was burning trash in a fifty-five gallon barrel on property leased by Buzzy's Wildwater Slide. Apparently, either burning trash or sparks flew out of the barrel, starting a grass fire. Clay Adams stated that when the fire reached the "mangroves," it got out of control. He stated that about midway through the mangroves, the fire was pouring the smoke across the highway heavily.
On May 18, 1988, Laura Avery was travelling in an easterly direction on La. Hwy. 82. She testified that as she was coming around "the corner," she saw smoke. Before entering the smoke, Avery was driving at a speed of approximately forty-five miles per hour, the speed limit. She reduced her speed and travelled through the smoke at approximately ten miles per hour. Two or three dump trucks entered the smoke ahead of her. Avery stated that when she entered the smoke she could see "a little bit" but that when she got in the middle of the smoke, she could not see anything.
August LeDoux was also travelling east on Hwy. 82, behind Avery. LeDoux testified that when he turned onto Hwy. 82/27, he saw two vehicles enter the smoke ahead of him; once both vehicles entered the smoke he could not see any traffic inside the smoke. LeDoux testified that he was travelling approximately fifty-five miles per hour. LeDoux testified that he proceeded until he got to the smoke and started slowing down. He stated that he did not know how fast he was driving when he entered the smoke. He also did not have any estimate as to how fast he was going just before seeing Avery's car, but he stated that he had his foot on the brake. Norton and Clay Adams testified in deposition that LeDoux never slowed down just prior to entering the smoke.
LeDoux testified that when he entered the smoke he did not think it was that bad but when he got into it he could not see but maybe ten to fifteen feet ahead of him. He saw Avery's vehicle when it was approximately fifteen feet in front of him. LeDoux was unable to stop his vehicle and struck Avery.

APPEAL NO. 91-538INSURANCE COVERAGE
Bel-Aire contends that the trial court erred by finding in the context of a motion for summary judgment: (1) that an employer-employee relationship existed between Buzzy's and Clay Adams and Alton Norton in order to make Buzzy's vicariously liable for the alleged negligence of Adams and Norton and thus making Adams and Norton insureds under the policy; (2) that the Bel-Aire policy provided general liability coverage to Buzzy's as opposed to liability coverage for only specific scheduled amusement hazards and operations; and (3) that the "pollution" exclusion of the Bel-Aire policy did not exclude coverage for the smoke in question.

Insureds
In order for the Bel-Aire policy to provide coverage for the actions of Alton Norton or Clay Adams, there must be a finding that Buzzy's Wildwater Slide, Inc., the named insured, was responsible for the actions of Alton Norton or Clay Adams or that Norton or Adams are otherwise "insureds" under the policy.
Concerning Buzzy's responsibility, LSA-C.C. art. 2320 provides in part that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."
"Our jurisprudence holds that in determining whether such a relationship exists the most important factor is the right of the alleged employer to control the work of the individual. Roberts v. State, Through Louisiana Health & Human Resources Administration, 404 So.2d 1221 (La.1981). Factors to assess the right to control include: 1) the selection and engagement of the worker; 2) *188 the payment of wages; and 3) the power of control and dismissal. Savoie v. Fireman's Fund Ins. Co., 347 So.2d 188 (La. 1977). Nevertheless, the jurisprudence is well settled that whether the employer actually exercises control or supervision over the worker is not as significant as whether, from the nature of the relationship, the employer had the right to do so. Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955)."
Sparks v. Progressive American Ins. Co., 517 So.2d 1036, 1038 (La.App. 3d Cir.), writ denied, 519 So.2d 106 (La.1987).
In Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748, 751 (La.1987), the court stated:
"A master or employer is liable for the tortious conduct of a servant or employee which is within the scope of authority or employment, but a principal is not liable for the physical torts of a non-servant agent. Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968). Liability for the negligent and tortious acts of another does not flow simply because of a principal-agent or principal-mandatary relationship. Civil Code article 2985 et seq., titled `Of Mandate', define the nature of the contractual relationship and the obligation of the parties under a mandate, but do not attempt to fix liability for the tortious acts of a mandatary. Id. Only when the relationship of the parties includes the principal's right to control physical details of the actor as to the manner of his performance which is characteristic of the relation of master and servant does the person in whose service the act is done become subject to liability for the physical tortious conduct of the actor. Id. citing Civil Code articles 176, 2315, 2317, 2320; Cf. Restatement (Second), Agency, § 250 (1957); W.A. Seavey, Law of Agency § 91 (1964)."
(emphasis added).
From our review of the record, we find that Alton Norton's role in the escape of the fire and any activity involved in the creation of the smoke hazard is not clear. However, for Buzzy's Wildwater Slide, Inc. to be vicariously liable for any damages asserted in this case, it is not necessary for both parties present on the premises to have been responsible for the fire and the smoke generated by the grass fire. It is enough if one of the parties was at fault in such a manner as to render Buzzy's vicariously liable. As we find that Clay Adams was clearly negligent and his act or acts contributed to the accident in which Laura Avery was injured, we need only determine whether Clay Adams bore such a relationship to Buzzy's as to impose vicarious liability on Buzzy's. Therefore, we need not concern ourselves with the status of Alton Norton.
Buzzy Adams testified that he was working for Zapata Haynie at the time of the accident. Buzzy Adams stated that he asked his brother, Clay Adams, to help him do the clean up because Buzzy Adams was still working for Zapata. Buzzy testified that on the day of the accident, Clay was not on the payroll, but was doing Buzzy a favor. Buzzy also testified that Clay had helped him the year before and that Clay had served as the manager for one year at some point prior to the accident. Additionally, Buzzy stated that he did not give Clay instructions on the day of the accident as to what he wanted because Clay knew.
Courts of this state have held that the relationship of master and servant may arise by implication and there need be no express contract of employment. Also it is not a requirement that the servant receive compensation, or that there be an agreement for compensation, for the services rendered. Whittington v. Sowela Technical Institute, 438 So.2d 236 (La.App. 3d Cir.), writs denied, 443 So.2d 591 and 443 So.2d 592 (La.1983); Beard v. Wilson Wholesale Distributors, Inc., 215 So.2d 664 (La.App. 1st Cir.1968); Bates v. Lagars, 193 So.2d 375 (La.App. 2d Cir.1966), writ refused, 250 La. 267, 195 So.2d 146 (La.1967); and Smith v. Foucha, 172 So.2d *189 318 (La.App. 4th Cir.), writ refused, 247 La. 678, 173 So.2d 542 (La.1965).[1]
In Bates v. Lagars, supra 193 So.2d at 380, the "servant" was a mere volunteer but the court of appeal stated that "[t]he existence of the relationship, so as to fix liability on the part of one person for the acts of another, depends upon the facts and circumstances that may be established in a particular case." In Beard v. Wilson Wholesale Distributors, Inc., supra, the inquiry was whether the injured claimant in a tort suit was relegated to seeking remedy through worker's compensation. The facts in Beard are somewhat similar to those presented here regarding Clay Adams. In Beard the injured party Darrell Brent Beard, had a history of temporary employment with the defendant, his uncle, during holidays. On the day in question, Darrell sought employment through the concern's business manager, Wallis Burns. No employment was available, but Darrell remained on the premises. When a leak was discovered in a warehouse, Burns rushed two regular employees to the site. Seeing Darrell Beard still on the premises, Burns sent Darrell along with the regular employees. While on the roof Darrell suffered an injury which became the basis for the suit on his behalf. There was no discussion of employment or compensation. In Smith v. Foucha, supra at 321, the court of appeal stated "[t]he question of pay vel non is one element of proof, but [is] not solely determinative of the relationship of employee and employer, or principal and agent."
We find that the trial court did not err in finding coverage under the policy since the trial court could have reasonably concluded that Buzzy's was vicariously liable for the act or acts of Clay Adams. Generally, in this connection, see Reed v. House of Decor, Inc., 468 So.2d 1159 (La.1985) and Whetstone v. Dixon, 616 So.2d 764 (La. App. 1st Cir.1993).

Type of Coverage
Bel-Aire contends that the policy does not provide liability coverage for the incident because coverage under the policy is limited to amusement liability only. Bel-Aire points out that the "Declaration" page of the policy specifically sets forth that coverage is for amusement liability only and that the policy contains a liability schedule that enumerates the specific hazards and locations that are insured by the policy. Bel-Aire asserts that only the premises and the use of the waterslides and miscellaneous amusements are covered.
However, we note that attached behind the "Declaration" page and before the "Liability Schedule" is a Commercial General Liability policy. Such a combination is incongruous and ambiguous in our estimation. Additionally, Buzzy Adams testified in deposition that Bill Vaughn, the insurance agent who apparently procured the insurance, did not indicate to him that the policy would not cover all risks that a normal general comprehensive business policy would cover. Buzzy Adams further stated that he asked the agent to cover the whole campground, to cover everything.
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Any ambiguous provisions in an insurance contract must be construed in favor of coverage to the insured and against the insurer who issued the policy. Smith v. Matthews, 611 So.2d 1377 (La. 1993). At best the policy is ambiguous if not contradictory. Accordingly we construe the policy in favor of Buzzy's to find coverage.

Pollution Exclusion
Bel-Aire also contends that the pollution exclusion of the policy excludes coverage for the incident. The Bel-Aire policy provides in part:
"2. Exclusions:
This insurance does not apply to:

*190 "f. `bodily injury' or `property damage' arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
"(1) at or from premises you own, rent or occupy;"
In Thompson v. Temple, 580 So.2d 1133, 1134 (La.App. 4th Cir.1991), the court stated that: "[p]ollution exclusion clauses are intended to exclude coverage for active industrial polluters, when businesses knowingly emitted pollutants over extended periods of time." See also West v. Board of Commissioners of the Port of New Orleans, 591 So.2d 1358 (La.App. 4th Cir. 1991); Crabtree v. Hayes-Dockside, Inc., 612 So.2d 249 (La.App. 4th Cir.1992), writ denied, 614 So.2d 1257 (La.1993).
In the case at hand, the record does not reveal that Buzzy's was an active industrial polluter which knowingly emitted pollutants over extended periods of time.
Accordingly, we find that the Bel-Aire policy provided coverage for the claim asserted against Buzzy's.

APPEAL NO. 92-838LIABILITY
Bel-Aire contends that the trial court erred in: (1) making no finding of fault on the part of LeDoux and the Cameron Parish Police Jury; (2) making no finding of contributory negligence on the part of Laura Avery; (3) in awarding Avery excessive damages; (4) and in finding coverage under the Bel-Aire policy for the claim.

Liability of August LeDoux and the Cameron Parish Police Jury
Bel-Aire contends that the trial court committed manifest error by making no finding of fault or liability on the part of LeDoux and the Cameron Parish Police Jury. We agree.
"The standard of care imposed upon a following motorist is that it shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the preceding vehicle and the traffic upon and the condition of the highway. LSA-R.S. 32:81(A). Our courts have held that a presumption of negligence arises in a rear-end collision, but this presumption may be rebutted by showing that the following driver kept his vehicle under control, that he observed the forward vehicle and that he followed at a safe distance under the circumstances. Eubanks v. Brasseal, 310 So.2d 550 (La. 1975); Cosse v. Bruley, 445 So.2d 41 (La.App. 4th Cir.1984). The following driver is required to maintain a sufficient distance which will allow him to stop under normal circumstances. Cosse, supra. The following motorist will be held liable for not avoiding foreseeable dangers and emergencies whether or not created by the preceding driver's negligence and will not be held to the duty of anticipating sudden or unexpected events. Deiler v. Clayton, 378 So.2d 516 (La.App. 4th Cir.1979)."
Collins v. Lemoine, 517 So.2d 994, 996 (La.App. 3d Cir.), writ denied, 519 So.2d 106 (La.1987).
The rule of sudden emergency cannot be invoked by one who has brought that emergency upon himself by his own wrong or who has not used due care to avoid it. The sudden emergency doctrine is applicable to the standard of conduct of a motorist after an emergency has arisen. It does not apply to lower the standard of care required of motorists before the emergency occurs. Evans v. Olinde, 609 So.2d 299 (La.App. 3d Cir.1992), writ denied, 616 So.2d 697 (La.1993). It is the unanticipated hazard which forms the foundation for sudden emergency. Fontenot v. Boehm, 512 So.2d 1192 (La.App. 1st Cir.1987).
Because LeDoux rear ended Avery's vehicle, the presumption of negligence attached. Therefore, to avoid a finding of negligence on LeDoux's part, it must be shown that LeDoux's conduct was reasonable and that he was not negligent prior to the time he encountered Avery's vehicle. Fontenot, supra.
LeDoux testified that when he turned off of Hwy. 82 onto 82/27, which was probably about a mile and a half from the smoke, he saw what looked like an eighteen wheeler or a tank truck of some kind and a black object behind it going into the smoke. He stated that he proceeded until he got to the *191 smoke and slowed down and entered the smoke. Norton and Clay Adams testified that LeDoux never slowed down prior to entering the smoke.
It is well settled that when visibility is impaired by smoke, fog, or other unfavorable atmospheric conditions, a motorist must exercise care in the operation of his vehicle commensurate with the danger created by the conditions. He must reduce his speed and maintain a close lookout. As an extreme measure, when visibility is destroyed or greatly obscured, he must stop his vehicle until conditions permit him to resume travel in reasonable safety. Campbell v. American Home Assurance Co., 260 La. 1047, 258 So.2d 81 (La.1972). A motorist does not have the right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead. If he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril. Lewis v. Quebedeaux, 134 So.2d 93 (La.App. 3d Cir.1961).
Under the circumstances, LeDoux did not overcome the presumption of negligence. Aware of the smoke and knowing that two vehicles had entered and disappeared into the smoke a mile and a half ahead of him, LeDoux should have greatly reduced his speed. In failing to take this precautionary measure, LeDoux violated the standard of care required of him prior to encountering Avery. He should have anticipated the hazard of encountering a vehicle moving slowly through the smoke due to decreased or nonexistent visibility. Accordingly, the trial court erred in failing to find that LeDoux was negligent and that his negligence was a substantial and unexcused factor in causing Avery's damages. We assess 50% fault to LeDoux.

Laura Avery's Negligence
We find no basis for reversing the trial court's failure to find Avery comparatively negligent. There is no manifest error in the court's determination that Avery acted reasonably under the circumstances.
Bel-Aire contends that Avery was negligent in failing to stop her vehicle prior to entering the smoke or in failing to take an alternative route.
Officer Donald January testified there were no shoulders on Hwy. 82/27, although there were a few dirt roads as well as Parish Road 502 that a person could turn onto prior to entering the smoke in order to avoid the smoke. Avery testified that when she first encountered the smoke, she could see "a little bit." The trial court could have reasonably inferred from the evidence that Avery was justified in believing she could safely proceed through the smoke at a reduced speed and that the road shoulders were inadequate for Avery to pull over once she realized the extent of the smoke.

QUANTUM OF DAMAGES
The trial court awarded Avery $65,000 in general damages. Bel-Aire appeals this award, stating in part in its appellate brief:
"Judge Fontenot, the trial judge, did not indicate in his opinion nor in written reasons whether he found Laura Avery to have suffered a herniated disc or just a bulging disc. If Judge Fontenot found that Laura Avery suffered a herniated disc, he committed manifest error due to the fact that there is no objective clinical findings by Dr. Gunderson nor objective diagnostic results to substantiate such a diagnosis. If Judge Fontenot found that plaintiff suffered from merely a bulging disc, then he committed manifest error by awarding Laura Avery $65,000 in general damages.
"Appellants urge that the logical finding of Judge Fontenot was that Laura Avery suffered a bulging disc. Although appellant does not concede liability, the finding of a bulging disc is borne out by the testimony of Dr. Zalud, Laura Avery's treating physician, and Dr. Litel. An award of $65,000 in general damages for a bulging disc is clearly wrong and excessive when compared with awards by other courts for similar injuries."
Dr. Mirolsav C. Zalud, an orthopedist, diagnosed Avery as having flexion/extension injury to the cervical and lumbar spine *192 and a contusion of the dorsal spine. Dr. Zalud had an EMG and a CAT scan performed on Avery. Dr. Zalud stated:
"The CT scan in the cervical area, the impression was at C4-C5 level. There is a smooth higher density consistent with a prominent bulging disk or minimal herniation of disk; and No. 2, posterior osteophyte to the right side at C5-C6 level....
"No. 2, minimal symmetrical bulging disk at the L4-L5 level. There does appear to be some averaging of structures anteriorly at L5-S1 with a spina bifida occulta of S1. No other abnormalities are seen on lumbar spine."
Avery saw Dr. Clark Gunderson, an orthopedic surgeon, on December 1, 1989. She saw Dr. Gunderson a total of four times. Based on an MRI study and subjective complaints, Dr. Gunderson diagnosed Avery as having a ruptured disc at the C5-6 level. The MRI study states in part:
"Exam demonstrates effacement of the anterior cervical subarachnoid space at C5-6 with slight mass effect on the anterior aspect of the cervical spinal cord. This appears to be due to some bony hypertrophic spurring and some mild disc bulging. There is some minimal bulging of the C4-5 intervertebral disc. The remaining cervical intervertebral discs appear normal in configuration and signal intensity. The cervical spinal cord appears normal in size and signal intensity. The cranial-vertebral junction is unremarkable.
IMPRESSION:
1. MASS EFFECT ON THE ANTERIOR CERVICAL SUBARACHNOID SPACE AT C5-6 WHICH APPEARS TO BE DUE TO A COMBINATION OF BONY HYPERTROPHIC SPURRING AND DISC BULGING.
2. MILD ANNULAR BULGING OF THE C4-5 INTERVERTEBRAL DISC.
3. THE REMAINING CERVICAL INTERVERTEBRAL DISCS APPEAR NORMAL.
4. THE CERVICAL SPINAL CORD APPEARS UNREMARKABLE."
Dr. Gunderson stated in deposition:
"THE IMPRESSION OF THE RADIOLOGIST, DR. BRUCE BORDLEE, WAS THAT SHE HAD A MASS EFFECT ON THE ANTERIOR CERVICAL SUBARACHNOID SPACE AT C5-6, WHICH APPEARS TO BE DUE TO A COMBINATION OF BONY HYPERTROPHIC SPURRING AND DISK BULGING. IN OTHER WORDS, SHE HAD A RUPTURED DISK BETWEEN THE FIFTH AND SIXTH VERTEBRAE IN HER NECK. SHE ALSO HAD SOME BULGING OF THE DISK ABOVE, BUT THIS WAS NOT FELT TO BE REAL SIGNIFICANT....
* * * * * *
"Q. NOW, A MINUTE AGO, YOU DISTINGUISHED BETWEEN A FRANK HERNIATION AND A BULGING; AND I NOTICED THAT HIS REPORT INDICATES THAT THE DISK WAS SIMPLY BULGING AT C5-6.
"A. WELL, I THINK THE TWO OF THESE THINGS IN COMBINATION WAS A HERNIATION OF THE DISK WITH PRESSURE ON THE SUBARACHNOID SPACE, AND THAT'S WHEN HE SAYS `A MASS EFFECT.' THAT MEANS THERE'S SOMETHING PRESSING ON THE SPINAL CORD ITSELF:
"Q. BUT HE ONLY MENTIONS BONY SPURRING OF DEGENERATIVE CHANGES AND A BULGING OF A DISK; IS THAT CORRECT?
"A. THAT'S WHAT HE MENTIONS, BUT I DON'TI THINK THIS IS ALL SEMANTICS ..."
(emphasis added.)
Dr. Gerald Litel, a neurosurgeon, reviewed a CAT scan which showed, among other things, that Avery had a smooth bulge at the C4-5 level and some bulging of the L4-5 disc.
We cannot discern from the record the findings of the trial court regarding the nature and extent of injuries Avery sustained *193 in the collision. The record supports at least a bulging disc or discs if not a herniated disc.
The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990).
In any event, we do not find the $65,000 award for general damages clearly excessive. Avery testified that following the collision of May 18, 1988, she experienced pain in her neck and back. She presented to various doctors with various complaints of pain. As of the time of trial, January 24, 1991, Avery testified that she was still having pain. She testified that the accident has affected her life in that she cannot get out and take long walks, cut grass, work in the yard, swim, bowl, or participate in "normal activities" and that she can do light housework. We affirm the award.

DISPOSITION
For the foregoing reasons, we affirm the trial court's finding of insurance coverage for Avery's claims against Buzzy's. We reverse the trial court's failure to find concurrent negligence on the part of August LeDoux; and accordingly we apportion the liability at 50% to Buzzy's Wildwater Slide, Inc. and its insurer Bel-Aire Insurance Company and 50% fault to August LeDoux and the Cameron Parish Police Jury. Accordingly, the judgment in favor of plaintiff, Laura Avery, against Buzzy's Wildwater Slide, Inc. and its insurer, Bel-Aire Insurance Company, in the amount of $77,407.09 is reduced to one-half of that amount, namely, $38,703.55, together with legal interest from date of judicial demand until paid. We affirm the judgment in all other respects. Costs of this appeal are assessed one-half to Laura Avery and one-half to defendants.
AFFIRMED IN PART, REVERSED IN PART, and AMENDED IN PART.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] In Whittington, in a concurring opinion, the author of this opinion questioned the holding of that case insofar as it related to the propositions stated above as applied in the context of that case. My reservations were based on certain pronouncements in Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (La.1968). I have no reservations relative to the case now before us, considering the facts of the case.